

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00058-CV

KENNETH RAY WALDROP                                    APPELLANT

V.

TERESA WALDROP                                          APPELLEE

----------

### FROM THE 393RD DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. 2006-61054-393

----------

## OPINION ON EN BANC RECONSIDERATION

----------

A majority of the court granted Appellant Kenneth Ray Waldrop's motion for en banc reconsideration. Accordingly, we withdraw our September 29, 2016 opinion and judgment, and we substitute the following opinion and judgment.

### I. INTRODUCTION

We address two primary issues in this appeal. First, whether the "Contractual Maintenance" provision in Kenneth and Appellee Teresa Waldrop's

agreed divorce decree is purely contractual or is spousal maintenance governed by chapter 8 of the family code.[1] For the reasons set forth below, we hold that the Waldrops' Contractual Maintenance provision is purely contractual, and we affirm the trial court's final order in this regard. And second, whether the language of the Waldrops' Contractual Maintenance provision authorizes the trial court to modify or terminate Kenneth's maintenance obligation by court order based on a change in Kenneth's circumstances affecting his maintenance obligation. For the reasons set forth below, we answer this query in the affirmative. We therefore reverse the trial court's final order in this regard and remand this case to the trial court for proceedings consistent with this opinion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On April 26, 2007, the trial court signed Kenneth and Teresa's agreed divorce decree. The agreed decree contained a provision stipulating that it was

---

[1]The Waldrops' agreed divorce decree was entered on April 26, 2007. Unless otherwise noted, all references in this opinion to chapter 8 of the family code will be to sections of chapter 8 as they existed on April 26, 2007. *See* Act of May 25, 2005, 79th Leg., R.S., ch. 914, § 1, 2005 Tex. Gen. Laws 3146, 3146 (amended 2011) (current version at Tex. Fam. Code Ann. § 8.051 (West Supp. 2017)); Act of May 25, 2005, 79th Leg., R.S., ch. 914, § 1, 2005 Tex. Gen. Laws 3146, 3147 (amended 2011) (current version at Tex. Fam. Code Ann. § 8.054 (West Supp. 2017)); Act of May 28, 2003, 78th Leg., R.S., ch. 1138, § 1, 2003 Tex. Gen. Laws 3231, 3231 (amended 2011) (current version at Tex. Fam. Code Ann. § 8.055 (West Supp. 2017)); Act of May 22, 2001, 77th Leg., R.S., ch. 807, § 1, 2001 Tex. Gen. Laws 1574, 1577 (amended 2011) (current version at Tex. Fam. Code Ann. § 8.056 (West Supp. 2017)); Act of May 22, 2001, 77th Leg., R.S., ch. 807, § 1, 2001 Tex. Gen. Laws 1574, 1577 (amended 2011) (current version at Tex. Fam. Code Ann. § 8.057 (West Supp. 2017)).

enforceable as a contract.[2]  The Contractual Maintenance provision in the agreed decree—which is at the heart of this appeal—requires Kenneth to make monthly payments of $3,000 to Teresa.  It provides, in pertinent part:

Contractual Maintenance

The Court finds that under the circumstances presented in this case, Teresa Waldrop is eligible for maintenance under the provisions of Texas Family Code Chapter 8.001 et seq[.] and that the parties have agreed that Kenneth Ray Waldrop will pay maintenance to Teresa Waldrop as set out below.  The parties have further agreed that Teresa Waldrop shall have all the rights and remedies afforded under the Texas Family Code, Chapter 8.001 et seq.  Accordingly, Kenneth Ray Waldrop is ordered to pay as maintenance the sum of $3,000.00 per month to Teresa Waldrop, with the first payment being due on February 1, 2007, and a like amount being due the first day of each consecutive month thereafter until the earliest of one of the following events occurs:

1.	death of either Petitioner or Respondent;

2.	remarriage of Teresa Waldrop;

3.	further orders of the Court affecting the spousal maintenance obligation, including a finding of cohabitation by Teresa Waldrop[;]

4.	[t]he first day of the month following the day that Teresa Waldrop becomes eligible to receive and begins to receive her portion of the Kimberly Clark pension awarded to her . . . above.  In this event, Kenneth Ray Waldrop is ORDERED to pay to Teresa

---

[2]The "Agreement of Parties" provision states,

The Court finds that the parties have entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance.  To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract.  The Court approves the agreement of the parties as contained in this Final Decree of Divorce.

3

Waldrop as maintenance the difference each month between $3,000.00 and the amount of the benefit received from the Kimberly Clark pension, due and payable on the first day of the first month immediately following the date that Teresa Waldrop becomes eligible to receive and does receive her portion of the Kimberly Clark pension and continuing thereafter until the next occurrence of one of the events 1–3 above. It is the intent of the parties that the $3,000.00 maintenance paid to Teresa Waldrop by Kenneth Ray Waldrop be reduced each month in an amount equal to the amount of the monthly pension benefit received by Teresa Waldrop from Kimberly Clark.

Approximately six years later, Kenneth initiated litigation concerning the Contractual Maintenance provision. Kenneth contended that the agreed decree's Contractual Maintenance provision imposed chapter 8 spousal maintenance and was therefore modifiable by the court upon a showing that Kenneth's circumstances had materially and substantially changed[3] and, that in any event, he could petition the trial court to modify or terminate his maintenance obligation for reasons other than the four reasons set forth under paragraph one—either party's death, Teresa's remarriage, a finding of cohabitation by Teresa, or Teresa's receipt of payments from the Kimberly Clark pension. Teresa, on the other hand, argued that the Contractual Maintenance provision was a contractual provision made outside the family code and was not modifiable by the trial court except upon the four circumstances set forth under paragraph one. Ultimately, following a bench trial on Kenneth's declaratory judgment claim and a

---

[3]*See* Tex. Fam. Code Ann. § 8.057(c).

4

subsequent hearing on attorney's fees, the trial court signed a final order and made findings of fact and conclusions of law.

The trial court declared that the agreed decree's Contractual Maintenance provision was purely contractual in nature and not subject to the provisions of chapter 8 and that the "further orders of the Court" language limited the trial court's authority to modify or terminate Kenneth's maintenance obligation to the specific circumstances of Kenneth's or Teresa's death, Teresa's remarriage or cohabitation, or Teresa's receipt of payments from the Kimberly Clark pension. The trial court alternatively held that although chapter 8's "material and substantial change in circumstances does not apply here," even if it did, "a material and substantial change in circumstances was not proven by [Kenneth]." The trial court ordered that Kenneth continue making payments under the Contractual Maintenance provision and ordered that he pay Teresa $28,590.53 in attorney's fees.[4]

Kenneth perfected this appeal and raises four issues complaining that the trial court erred by concluding that the Contractual Maintenance provision was

---

[4]The trial court made conclusions of law concerning each declaration. Conclusion of law 4 states, "The contractual maintenance provision in the Final Decree of Divorce is contractual." Conclusion of law 5 states, "Chapter 8 of the Texas Family Code does not apply to the spousal maintenance in the Final Decree of Divorce." And conclusion of law 8 states, in pertinent part, "[T]he Court alternatively finds that a material and substantial change in circumstance was not proven by [Kenneth] in order to decrease [his] spousal maintenance obligation (if such obligation existed)."

contractual in nature and was not subject to the provisions of chapter 8 of the family code, by finding that the Contractual Maintenance provision could not be modified by further court order except in the four specifically identified circumstances, by finding that a material and substantial change in his circumstances had not occurred, and by awarding attorney's fees to Teresa.

### III. STANDARD OF REVIEW

We review declaratory judgments under the same standards as other judgments and decrees. *Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 65 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *McBride v. James*, No. 02-09-00320-CV, 2011 WL 1103758, at *5 (Tex. App.—Fort Worth Mar. 24, 2011, pet. denied) (mem. op.). We look to the procedure used to resolve the issue below to determine the standard of review on appeal. *Tanglewood Homes Ass'n*, 436 S.W.3d at 65–66; *McBride*, 2011 WL 1103758, at *5. When a declaratory judgment is entered after a bench trial, we review the trial court's conclusions of law de novo. *Trinity Drywall Sys., LLC v. Toka Gen. Contractors, Ltd.*, 416 S.W.3d 201, 207 (Tex. App.—El Paso 2013, pet. denied); *Rourk v. Cameron Appraisal Dist.*, 305 S.W.3d 231, 234 (Tex. App.—Corpus Christi 2009, pet. denied).

We interpret an agreed divorce decree according to the rules of contract construction. *In re W.L.W.*, 370 S.W.3d 799, 804 (Tex. App.—Fort Worth 2012, orig. proceeding [mand. denied]). Our primary concern when interpreting an agreed divorce decree is to ascertain and give effect to the intent of the parties

6

as it is expressed in the agreement. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Perry v. Perry*, 512 S.W.3d 523, 527 (Tex. App.—Houston [1st Dist.] 2016, no pet.). We examine the decree as a whole to harmonize and give effect to the entire agreement so that none of its provisions will be rendered meaningless. *Coker*, 650 S.W.2d at 393; *Perry*, 512 S.W.3d at 527.

#### IV. WHETHER THE TRIAL COURT ERRED BY CONCLUDING THAT THE WALDROPS' CONTRACTUAL MAINTENANCE PROVISION IS PURELY CONTRACTUAL AND IS NOT SUBJECT TO CHAPTER 8

In his first issue, Kenneth argues that the trial court erred by concluding that the Contractual Maintenance provision is purely contractual and is not subject to chapter 8.

### A. Contractual Alimony Versus Chapter 8 Maintenance

#### 1. Statutes

Before 1995, a court-ordered award of post-divorce alimony or spousal maintenance was impermissible under the statutes and public policy of Texas. *McCollough v. McCollough*, 212 S.W.3d 638, 642 (Tex. App.—Austin 2006, no pet.); *Ex parte Casey*, 944 S.W.2d 18, 19 (Tex. App.—Houston [14th Dist.] 1997, orig. proceeding). Nonetheless, the Texas Supreme Court recognized that parties could contractually agree to such awards. *McCollough*, 212 S.W.3d at 642 (citing *Francis v. Francis*, 412 S.W.2d 29, 31 (Tex. 1967)). "The mere fact that an agreement to pay alimony might be incorporated into a divorce decree and explicitly approved by the court did not render it an unenforceable court order or award of alimony." *Id.* By enacting chapter 8 of the family code,

7

effective September 1, 1995, however, the legislature authorized courts to award post-divorce spousal maintenance. *Id.* at 643. But the legislature strictly limited the circumstances under which spousal maintenance could be awarded. *Id.*

When the Waldrops' agreed decree was signed, chapter 8 spousal maintenance could be awarded only if

> (1) the spouse from whom maintenance is requested was convicted of or received deferred adjudication for a criminal offense that also constitutes an act of family violence under Title 4 and the offense occurred:
>
>> (A) within two years before the date on which a suit for dissolution of the marriage is filed; or
>>
>> (B) while the suit is pending; or
>
> (2) the duration of the marriage was 10 years or longer, the spouse seeking maintenance lacks sufficient property, including property distributed to the spouse under this code, to provide for the spouse's minimum reasonable needs, as limited by Section 8.054, and the spouse seeking maintenance:
>
>> (A) is unable to support himself or herself through appropriate employment because of an incapacitating physical or mental disability;
>>
>> (B) is the custodian of a child of the marriage of any age who requires substantial care and personal supervision because of a physical or mental disability makes it necessary, taking into consideration the needs of the child, that the spouse not be employed outside the home; or
>>
>> (C) clearly lacks earning ability in the labor market adequate to provide support for the spouse's minimum reasonable needs, as limited by Section 8.054.

Tex. Fam. Code Ann. § 8.051. When the Waldrops' agreed decree was signed, an award of spousal maintenance was further limited by sections 8.054 and

8

8.055.  Section 8.054 provided that, except in cases of disability, a court could not order maintenance that remained in effect for more than three years after the date of the order.  *Id.* § 8.054.  And section 8.055 provided that a court could not order maintenance that required an obligor to pay more than the lesser of $2,500 per month or twenty percent of the spouse's average monthly gross income.  *Id.* § 8.055.

## 2.  Case Law

When parties agree or stipulate that a maintenance provision set forth in their divorce decree is enforceable as a contract, absent express language indicating chapter 8 governs the maintenance provision, courts will enforce the maintenance provision as a matter of contract law, independent of chapter 8.  See *Lee v. Lee*, No. 02-14-00064-CV, 2015 WL 601054, at *1 (Tex. App.—Fort Worth Feb. 12, 2015, no pet.) (mem. op.) (holding chapter 8 did not apply to agreed decree's maintenance provision); *Ammann v. Ammann*, No. 03-09-00177-CV, 2010 WL 4260955, at *1 (Tex. App.—Austin Oct. 28, 2010, no pet.) (mem. op.) (same); *Kee v. Kee*, 307 S.W.3d 812, 813–14 (Tex. App.—Dallas 2010, pet. denied) (same); *McCollough*, 212 S.W.3d at 647–48 (same).  In determining whether the parties intended for chapter 8 to apply to an agreed maintenance provision, courts additionally examine whether the agreed maintenance provision sets forth the criteria required to trigger chapter 8 spousal support and imposes a support obligation that is within chapter 8's limit on the amount and duration of such support.  See *Lee*, 2015 WL 601054 at *2 (noting

9

that no indication existed that trial court considered all of chapter 8's factors in determining maintenance); *Ammann*, 2010 WL 4260955, at *2 ("The decree contains no references to the factors the court must consider in determining the nature, amount, duration, and manner of payments pursuant to chapter 8."); *Kee*, 307 S.W.3d at 815 (noting the decree "failed to follow [chapter 8's] guidelines with respect to the amount of support and the duration of the support"); *McCollough*, 212 S.W.3d at 646 ("Randy's agreed alimony obligation also would have violated chapter 8 from its inception" by allowing payments over a period of ten years in an amount of $5,000 per month). An agreed maintenance provision, enforceable as a contract, is not subject to chapter 8 merely because it references chapter 8 or states that a spouse is eligible for spousal maintenance under chapter 8. *See Ammann*, 2010 WL 4260955, at *2 ("The mere reference to family code chapter 8 in a divorce decree does not transform a contractual alimony obligation into a court-ordered maintenance obligation governed by that chapter."); *Kee*, 307 S.W.3d at 814–15 (holding chapter 8 did not apply to maintenance provision despite recitation in decree that wife was "eligible for maintenance" under the family code). We now apply these principles to the Waldrops' Contractual Maintenance provision.

10

## B. Analysis of the Waldrops' Contractual Maintenance Provision

Kenneth argues that a plain reading of the divorce decree makes it clear that the Contractual Maintenance provision provides for chapter 8 spousal maintenance and not contractual alimony. He points to the fact that the term "alimony" is never used in the decree, while the term "maintenance" is used fourteen times. He also points to three references to chapter 8 contained in the Contractual Maintenance provision—that Teresa was eligible for maintenance under "Chapter 8.001 et seq[.]," that she would have "all rights and remedies afforded under . . . Chapter 8.001 et seq[.]," and that "a copy of subchapter E of chapter 8" was to be attached to the decree—as evidence that the decree provides for chapter 8 spousal maintenance rather than contractual alimony.

Teresa counters that the terms of the Contractual Maintenance provision are "clearly . . . outside the bounds of Chapter 8 maintenance"—an indication that the divorce decree is governed by contract rather than chapter 8. She argues that the duration of the payments contemplated by the decree violates chapter 8 because it allows for payments to continue for more than the three-year limit imposed by the version of section 8.054 applicable when she and Kenneth signed their agreed decree. *See* Tex. Fam. Code Ann. § 8.054. She also points to the fact that Kenneth's payment obligation was $3,000 per month, which was outside the $2,500 monthly limit imposed by chapter 8 at the time the parties entered the agreed decree. *See id.* § 8.055.

11

The Waldrops' Contractual Maintenance provision would have violated chapter 8 from its inception because it required Kenneth to make payments for a duration longer than the three-year period then permitted under section 8.054 and required him to make monthly payments greater than the $2,500 limit set by section 8.055. *See id.* §§ 8.054, 8.055. While the Contractual Maintenance provision does make three references to chapter 8, these references do not subject the Contractual Maintenance provision to the terms of chapter 8; indeed, they cannot because the Contractual Maintenance provision imposes upon Kenneth a maintenance obligation that exceeds the amount and duration limits of the then-applicable chapter 8. *See id.* §§ 8.054, 8.055; *Ammann*, 2010 WL 4260955, at *2 (holding maintenance provision not subject to chapter 8 when payment amount and duration violated chapter 8); *Kee*, 307 S.W.3d at 815 (same). Kenneth is correct that the Contractual Maintenance provision uses the term "maintenance," but the provision's use of the term "maintenance" and its nonuse of the term "alimony" is, in the context of the entire provision, mere nomenclature incapable of altering the substance of the provision. *See Lee*, 2015 WL 601054, at *1, *3 (holding despite use of term "maintenance" in decree, payment obligation was not governed by chapter 8); *Ammann*, 2010 WL 4260955, at *1–3 (same).

Kenneth attempts to factually distinguish *McCollough* and *Kee*, pointing out that the parties in those cases signed separate contractual agreements for maintenance or alimony outside of the divorce decree—an agreement incident to

divorce and a partition and exchange agreement—while there is no contract outside of the decree here. In *Lee*, we addressed and rejected this same argument:

> [D]espite Jerry's attempt to distinguish contractual alimony provided in an agreement incident to divorce or partition and exchange agreement from the spousal maintenance agreement he entered into with Danelle as part of the agreed decree of divorce, that the agreed spousal support is part of the decree and not incident to it is not relevant to our treatment of the decree as a binding contract. An agreed divorce decree, such as the one in this case, is a contract subject to the usual rules of contract construction.

2015 WL 601054, at *3 (quotation omitted). We again decline to draw a distinction between contractual agreements set forth in a divorce decree and those incident to, but not set forth in, a divorce decree. *See id.*; *see also Hicks v. Hicks*, 348 S.W.3d 281, 283 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("Because the parties entered into an agreed divorce decree, it is treated as a contract between the parties with the law of contracts governing the interpretation of the decree's legal force and meaning."); *Giles v. Giles*, 830 S.W.2d 232, 238 (Tex. App.—Fort Worth 1992, no writ) ("[T]here is no reason the separate contractual agreement between the spouses must be in written form prior to the trial court's signing the written judgment—the judgment itself operates as the written manifestation of the parties' agreement.").

Kenneth also argues that the Contractual Maintenance provision is governed by chapter 8 because the payment obligation "terminates pursuant to the factors set forth in [s]ection 8.056 of the Texas Family Code" and because it

13

"reflects the language proposed by the Texas Family Law Practice Manual for court ordered spousal maintenance." But the mere fact that the payment obligation may terminate pursuant to some of the factors listed in section 8.056, or that the language contained in the Contractual Maintenance provision may mirror some of the language used in the Texas Family Law Practice Manual for court-ordered spousal maintenance, does not convert the parties' agreement into something other than a contract.[5] Kenneth and Teresa were free to include selected language from chapter 8 or from a family law practice manual without automatically converting their Contractual Maintenance provision into chapter 8 spousal maintenance. *See* 8 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 36.2 (4th ed. 2000) ("Theoretically, at least, people are free to contract as they choose, limiting their rights and duties in ways that are unusual or absurd or unprofitable."); *see also Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 112 (Tex. 2010) ("[P]arties are free to contract as they choose.").[6]

---

[5]The section of the Texas Family Law Practice Manual that Kenneth points to contains the following language: "[This section] applies only to *court-ordered spousal maintenance*. If the parties have agreed to contractual alimony, such provisions may be part of the final decree of divorce." [Emphasis in original.]

[6]Kenneth argues that the Contractual Maintenance provision itself makes no reference that its provisions are enforceable in contract. But we are to examine the decree as a whole to harmonize and give effect to the entire agreement. *See Coker*, 650 S.W.2d at 393; *Perry*, 512 S.W.3d at 527. As set forth previously, the "Agreement of Parties" provision provided that the agreed decree was enforceable as a contract. The Contractual Maintenance provision's

Kenneth further argues that certain 2013 amendments to chapter 8 support his position that the Contractual Maintenance provision is governed by chapter 8. He points to section 8.101(a-1) and (a-2), which now allow a trial court to withhold earnings from an obligor "in a proceeding in which there is an agreement for periodic payments of spousal maintenance under the terms of [chapter 8] voluntarily entered into between the parties and approved by the court" and further provides that the trial court may not order income withholding in an agreed order "for maintenance [that] exceeds the amount of periodic support the court could have ordered under [chapter 8] or for any period of maintenance beyond the period of maintenance the court could have ordered under [chapter 8]." Tex. Fam. Code Ann. § 8.101(a-1), (a-2) (West Supp. 2017). He also points to section 8.059(a-1), which provides that a trial court may not enforce by contempt any provision of an agreed order for maintenance that exceeds the amount or duration of maintenance the court could have ordered under chapter 8. *Id.* § 8.059(a-1) (West Supp. 2017) Kenneth argues that these sections, when read in conjunction with section 8.057's modification provisions, support his position that chapter 8 governs the Contractual Maintenance provision. Alternatively, he argues that sections 8.057, 8.059, and 8.101 allow for $2,500 of the $3,000 monthly payment obligation to be considered spousal

failure to restate a second time that it is enforceable as a contract is not controlling.

maintenance under chapter 8 and the remaining $500 to be considered contractual alimony.

The 2013 additions of section 8.101(a-1) and (a-2) and section 8.059(a-1) to chapter 8 have no bearing on our construction of the Waldrops' 2007 agreed divorce decree. When construing a contract, we look to the overall agreement to "determine what purposes the parties had in mind *at the time they signed it*." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016) (emphasis added) (internal quotation omitted). While chapter 8 may now contemplate agreed orders for spousal maintenance under chapter 8, no such provision existed in 2007 when the parties signed their agreed divorce decree. We therefore decline to depart from the precedent set by *Lee* (a case we decided in 2015), *Ammann*, *Kee*, and *McCollough. See Lee*, 2015 WL 601054, at *1, *3; *Ammann*, 2010 WL 4260955, at *2; *Kee*, 307 S.W.3d at 815; *McCollough*, 212 S.W.3d at 647–48.

Applying controlling rules of construction and existing case law in conducting our de novo review of the trial court's conclusions of law numbers 4, 5, and 8, we hold that the trial court did not err by concluding that the Contractual Maintenance provision was purely contractual in nature and not subject to chapter 8. *See Trinity Drywall Sys.*, 416 S.W.3d at 207; *Rourk*, 305 S.W.3d at 234. We overrule Kenneth's first issue.

## V. Whether the Trial Court Erred by Concluding that the Waldrops' Contractual Maintenance Provision Cannot Be Modified by Further Court Order Absent the Four Listed Circumstances

In his second issue, Kenneth argues that even if the Contractual Maintenance provision is purely a matter of contract and chapter 8 does not apply to it, the trial court still erred by concluding that the maintenance provision could not be modified by further court order absent one of the four specific circumstances set forth under paragraph one of the provision.

### A. The Further-Orders Language and the Trial Court's Conclusion

The Contractual Maintenance provision states that Kenneth is to pay Teresa $3,000 per month beginning on February 1, 2007, and continuing until the earliest of one of the following events occurs: (1) either party's death; (2) Teresa's remarriage; (3) "further orders of the Court affecting the spousal maintenance obligation, including a finding of cohabitation by Teresa"; and (4) when Teresa becomes eligible to receive and begins to receive her portion of the Kimberly Clark pension awarded in the decree, at which time, Kenneth is to pay monthly to Teresa the difference between $3,000 and the amount of the monthly benefit Teresa receives from the Kimberly Clark pension.

In its final order, the trial court declared the following regarding the phrase "further orders of the Court" contained in the Contractual Maintenance provision:

> "[F]urther orders of the Court" is interpreted to refer only to the three instances of termination as stated, specifically upon the death of either [Teresa] or [Kenneth], upon the remarriage of [Teresa], or upon the cohabitation of [Teresa]; it refers only to one instance of modification of the amount of support, and that is to the equal offset

17

reduction provided by the Kimberly Clark Pension upon the beginning of [Teresa] receiving her benefit.[7]

## B. Application of Rules of Contract Construction to the Waldrops' Contractual Maintenance Provision

Having held that the Contractual Maintenance provision in the Waldrops' agreed divorce decree is purely contractual, we apply the rules of contract construction to determine whether the Contractual Maintenance provision and its further-orders-of-the-court language authorizes the trial court to modify or terminate Kenneth's maintenance obligation for reasons in addition to the specifically listed reasons under paragraph one of the Contractual Maintenance provision—either party's death, Teresa's remarriage, a finding of cohabitation by Teresa, or Teresa's receipt of payments from the Kimberly Clark pension. *See, e.g.*, *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984) (op. on reh'g) (construing marital property settlement agreement though incorporated into a final divorce decree pursuant to rules of contract construction); *Perry*, 512 S.W.3d at 527 ("We interpret an agreed divorce decree according to the rules of contract construction.").

When construing a written contract, intermediate appellate courts give effect to the true intentions of the parties as expressed in the agreement. *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012). In so doing, we consider the entire written contract and attempt to

---

[7]This language also appears in the trial court's findings of fact and conclusions of law.

18

harmonize and to give effect to all of the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311−12 (Tex. 2005). We "construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Id.* (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Innovate Tech. Sols. v. Youngsoft, Inc.*, 418 S.W.3d 148, 151 (Tex. App.—Dallas 2013, no pet.) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). We construe the decree as a whole to harmonize and to give effect to the entire agreement so that none of its provisions will be rendered meaningless. *Howard v. Howard*, 490 S.W.3d 179, 184 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

On appeal, Kenneth and Teresa both contend that the further-orders-of-the-court language of the Contractual Maintenance provision is unambiguous. Kenneth argues that the phrase indicates that "the maintenance amount can be modified or reduced by the Court." Teresa, on the other hand, argues that the phrase "was only meant to speak of the four already enumerated conditions by which the payments could be terminated or reduced." An ambiguity does not arise simply because the parties offer conflicting interpretations. *See Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). An ambiguity

19

exists only if the contract language is susceptible to two or more reasonable interpretations. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998).

Agreed contractual maintenance provisions will not be terminated or modified by courts except as provided for in the agreement. *See, e.g.*, *Lee*, 2015 WL 601054, at *3 (holding contractual maintenance provision in agreed decree, which provided that husband's maintenance obligation terminated upon wife's death or remarriage, did not terminate on wife's cohabitation); *Ammann*, 2010 WL 4260955, at *1–2 (holding contractual maintenance provision in agreed decree, which provided that husband's maintenance obligation terminated upon date certain or wife's death, did not terminate on wife's cohabitation); *see also Kee*, 307 S.W.3d at 814–15 (holding that because contractual maintenance agreement did not authorize income withholding from husband, court could not order it). In contrast, however, when an agreed contractual maintenance provision does provide for court termination or modification of the contractual maintenance by limiting continuance of the agreed-upon maintenance "until further order of the court," court modification or termination of the agreement is authorized on common law or statutory grounds unless the agreement elsewhere expressly prohibits it. *See McCollough*, 212 S.W.3d at 646–47 (recognizing agreed contractual maintenance provision authorized judicial modification via bill of review proceeding); *In re Marriage of Udis*, 780 P.2d 499, 502 (Colo. 1989) (holding agreed maintenance provision, which provided for "readjust[ment] as

20

agreed between the parties or determined by the Court," authorized trial court to modify contractual maintenance provision on ground of unconscionability); *Pohl v. Pohl*, 15 N.E.3d 1006, 1013–14 (Ind. 2014) (construing the phrase "until further order of the court" as making a contractual maintenance agreement "modifiable by the [agreement's] own terms, even though it would not be otherwise"); *see also Hidalgo v. Hidalgo*, No. 05-06-00966-CV, 2011 WL 1797621, at *1 (Tex. App.—Dallas May 10, 2011, no pet.) (mem. op. on remand) (noting that although agreement provided, "[t]his spousal support shall continue on the first day of the month and thereafter until the death of either party, or further Order of the Court[,]" it also stated that the contract's provisions for spousal support "shall not be subject to modification or revocation by any court, with the exception of Wife's death").

In *Pohl*, after recognizing the policy considerations on both sides of the issue, the Indiana Supreme Court ruled that even in cases in which the trial court could have unilaterally ordered a maintenance award identical to the one agreed to by the parties, nonetheless, the court would presume the parties intended their agreement to be final and nonmodifiable unless they specifically provided otherwise. 15 N.E.3d at 1013–14. The *Pohl* court held, however, that a contractual maintenance provision requiring payments to continue "until further order of the court" or "agreement of the parties" made the provision modifiable by its own terms. *Id.* at 1014. The *Pohl* court explained,

21

But here, the Addendum *does* contain precisely such a provision, calling for Barbara's payments to continue "until further order of the court *or* agreement of the parties" (emphasis added). Because "further order of the court" is expressed in the alternative to "agreement of the parties," we should construe the contract in a way that gives each term independent meaning, rather than rendering one surplusage. *E.g.*, *Whitaker v. Brunner*, 814 N.E.2d 288, 294 (Ind. Ct. App. 2004), *trans. denied* ("We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless."). And here, we would be hard pressed to ascribe any independent meaning to the "further order of the court" provision unless it serves the same purpose as similar language in the incapacity maintenance statute, which permits modification of such awards by making them "subject to further order of the court." I.C. § 31–15–7–2(1); *Haville v. Haville*, 825 N.E.2d 375, 378 n.2 [(Ind. 2005)]. Accordingly, maintenance under the Addendum is modifiable by the Addendum's own terms, even though it would not be otherwise.

*Id.*; *see* John J. Michalik, Annotation, *Divorce: Power of Court to Modify Decree for Alimony or Support of Spouse Which Was Based on Agreement of Parties*, 61 A.L.R.3d 520 (1975).

Turning to the express language used by Kenneth and Teresa in their Contractual Maintenance provision, they agreed that Kenneth's obligation could cease "upon further orders of the Court affecting the spousal maintenance obligation, including a finding of cohabitation by Teresa." If Kenneth and Teresa had intended to limit the modification and termination of Kenneth's contractual maintenance payments to only either party's death, Teresa's remarriage, Teresa's cohabitation, or when Teresa begins receiving the Kimberly Clark pension, they could have easily done so by simply omitting the words "further orders of the Court affecting the spousal maintenance obligation, including a

22

finding of." *See, e.g.*, *Hidalgo*, 2011 WL 1797621, at *1 (addressing contractual maintenance provision that was nonmodifiable because it stated it would "not be subject to modification or revocation by any court, with the exception of Wife's death"); *see also Croom v. Croom*, 406 S.E.2d 381, 382 (S.C. Ct. App. 1991) (addressing contractual maintenance provision that was nonmodifiable because it stated that it was "not modifiable by the parties or any court without written consent of the Husband and Wife"). The Waldrops' Contractual Maintenance provision contains no language making it expressly nonmodifiable despite the "further orders of the court" language.

Because Kenneth and Teresa used the language "further orders of the Court affecting the spousal maintenance obligation, including a finding of" as one possible end point for Kenneth's $3,000 monthly maintenance obligation, we must give this language some effect; we cannot construe the Contractual Maintenance provision as if this language did not exist.[8] *See Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 477 (Tex. 2016) ("[W]e strive to construe contracts in a manner that avoids rendering any language superfluous."). And here, we would be hard pressed to ascribe any independent meaning to this language unless it authorizes the trial court to sign an order modifying Kenneth's

---

[8]Teresa's interpretation of the Contractual Maintenance provision treats this language as nonexistent, as if cohabitation is the only term in this listed circumstance supporting modification or termination of Kenneth's obligation.

23

maintenance obligation in some respect. *See Coker*, 650 S.W.2d at 393; *Perry*, 512 S.W.3d at 527; *see also Pohl*, 15 N.E.3d at 1013–14.

This construction of the Waldrops' Contractual Maintenance provision is consistent with the provision's "*including* a finding of cohabitation by Teresa" language. [Emphasis added.] General rules of contract construction provide that the terms "includes" and "including" are terms of enlargement and not of limitation or exclusive enumeration, and the use of those terms does not create a presumption that components not expressed are excluded. *See* Tex. Gov't Code Ann. § 311.005(13) (West 2013). The language used by Kenneth and Teresa in their Contractual Maintenance provision provides that Kenneth's $3,000 monthly maintenance obligation continues "until the earliest of one of the following events occurs" and includes in the list of events "further orders of the Court affecting the spousal maintenance obligation, *including* a finding of cohabitation by Teresa." [Emphasis added.]

In summary, the language chosen by the parties—that "Kenneth Ray Waldrop is ordered to pay . . . maintenance . . . until the earliest of one of the following events occurs: . . . 3. further orders of the Court affecting the spousal maintenance obligation, including a finding of cohabitation by Teresa Waldrop"— has a certain and definite legal meaning: that the parties agreed and contemplated that the payment obligation under the Contractual Maintenance provision could be modified by a subsequent, further order of the trial court. *See Coker*, 650 S.W.2d at 393; *Perry*, 512 S.W.3d at 528; *see also Pohl*, 15 N.E.3d at

24

1015 ("If divorcing parties want to make judicial modification available for their maintenance agreements, they must say so in their contract—as the parties did here."). This language is not ambiguous; it clearly vests the trial court with authority to subsequently judicially modify Kenneth's payment obligation under the Contractual Maintenance provision. *See Coker*, 650 S.W.2d at 393; *Perry*, 512 S.W.3d at 528; *see also Pohl*, 15 N.E.3d at 1015. Therefore, although Kenneth's declaratory judgment action pleaded for clarification of "the rights and obligations of both parties, to provide a date certain of when the maintenance obligation ends, or alternatively, to define the criteria for terminating or reducing the maintenance obligation," the trial court did not address this aspect of Kenneth's declaratory judgment action because it erroneously determined that the Contractual Maintenance provision "refers only to one instance of modification of the amount of support, and that is to the equal offset reduction provided by the Kimberly Clark Pension upon the beginning of [Teresa] receiving her benefit." Because the Contractual Maintenance provision can be modified by further court order absent either party's death, Teresa's remarriage, Teresa's cohabitation, or when Teresa begins receiving the Kimberly Clark pension, we sustain Kenneth's second issue.

Because we sustain Kenneth's second issue, we will remand this case back to the trial court for a determination of whether Kenneth's maintenance obligation should be modified or terminated by further orders of the court. We leave it to the trial court's discretion, as did the parties in the Contractual

25

Maintenance Provision, to determine whether Kenneth's maintenance obligation should be terminated or modified and to determine the amount, if any, of a modification.[9] *See, e.g.*, *Marriage of Udis*, 780 P.2d at 502 (explaining language in contractual maintenance provision authorized judicial modification on ground of unconscionability); *Pohl*, 15 N.E.3d 103–14 (explaining language in contractual maintenance provision authorized judicial modification on same grounds as incapacity maintenance statute); *Schwartz v. Schwartz*, 247 S.W.3d 804, 806 (Tex. App.—Dallas 2008, no pet.) (explaining language in contractual maintenance provision authorized judicial modification upon consent of the

---

[9]We share some of the concerns and sentiments expressed in the concurring and dissenting opinions. We would like to assist the trial court by enunciating criteria for its consideration in whether to terminate or to modify Kenneth's maintenance obligation. But, although Kenneth's pleadings in the trial court expressly sought such a declaration, the trial court correctly did not rule on it. The Uniform Declaratory Judgments Act gives the trial court no power to pass upon hypothetical or contingent situations or to determine questions not then essential to the decision of an actual controversy, even though such questions may in the future require adjudication. *See, e.g.*, *Riner v. City of Hunters Creek,* 403 S.W.3d 919, 922 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Because the trial court declared that "further orders of the Court" could be entered only upon either party's death, Teresa's remarriage, a finding of cohabitation by Teresa, or Teresa's receipt of payments from the Kimberly Clark pension, it had no power to pass on the hypothetical, contingent situation of what equitable or legal criterion it might apply if the "further orders of the Court" language did authorize it to terminate or modify Kenneth's maintenance obligation. Because the trial court did not address this aspect of Kenneth's request for declaratory relief, because the trial court's judgment does not rule on it, because the trial court made no findings of fact or conclusions of law on it, and because the parties did not brief it on appeal, it is simply not teed up for our disposition in this appeal. Therefore, we decline to address it. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (West 2015) (providing that declaratory judgments are reviewed under the same standards as other judgments).

26

parties or upon a showing of fraud, accident, or mutual mistake of fact); *McCollough*, 212 S.W.3d at 647 (explaining language in contractual maintenance provision authorized judicial modification via bill of review).

## VI.  WHETHER THE TRIAL COURT ERRED BY CONCLUDING THAT CHAPTER 8'S STANDARD WAS NOT MET

In his third issue, Kenneth argues that the trial court erred by concluding, in the alternative, that if chapter 8 applied, then under chapter 8 Kenneth had not shown a material and substantial change in his circumstances as required to trigger modification of his $3,000 monthly maintenance obligation.[10]  *See* Tex. Fam. Code Ann. § 8.057(c) (providing that trial court may modify order or portion of a decree providing for maintenance on a proper showing of a material and substantial change in circumstances).  We have held that the Waldrops' Contractual Maintenance provision is not subject to chapter 8.  Therefore, the trial court's alternative holding applying chapter 8 was in error.  We sustain Kenneth's third issue.

---

[10]The trial court's conclusion of law number 8 states:

> Although the Court interprets that the Final Decree contains provisions regarding contractual alimony, and not spousal maintenance as defined by Chapter 8 of the Texas Family Code, the Court alternatively finds that a material and substantial change in circumstances was not proven by [Kenneth] in order to decrease [Kenneth's] spousal maintenance obligation (if such obligation existed).

Conclusion of law 8 is not supported by any findings of fact.

27

## VII. WHETHER THE TRIAL COURT ERRED BY
## AWARDING ATTORNEY'S FEES TO TERESA

In his fourth issue, Kenneth argues that the trial court erred by awarding attorney's fees to Teresa. Because we have sustained Kenneth's second and third issues and because we will reverse in part the trial court's final order on Kenneth's declaratory judgment action, we likewise reverse the trial court's award of attorney's fees to Teresa and remand that issue back to the trial court. *See Grohman-Kahlig v. Kahlig*, No. 04-07-00468-CV, 2008 WL 5377704, at *1 (Tex. App.—San Antonio Dec. 17, 2008, no pet.) (mem. op.) (op. on reh'g) ("[B]ecause we reverse the portion of the trial court's judgment granting the declaratory relief, we also reverse the award of attorney's fees and remand the cause to determine, in part, what award of attorney's fees, if any, is equitable and just in light of our holdings.") (internal quotation omitted); *SAVA Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 324 (Tex. App.—Dallas 2004, no pet.) ("[W]hen we reverse a declaratory judgment and the trial court awarded attorney's fees to the party who prevailed at trial, we may remand the attorney's fee award for reconsideration in light of our disposition on appeal."). We sustain Kenneth's fourth issue.

## VIII. CONCLUSION

Having overruled Kenneth's first issue, we affirm the portion of the trial court's final order on Kenneth's declaratory judgment declaring the Contractual Maintenance provision to be purely contractual. Having sustained Kenneth's

28

second, third, and fourth issues, we reverse the portion of the trial court's final order on Kenneth's declaratory judgment declaring that the "further orders of the court, including" language does not authorize the trial court to modify the Contractual Maintenance provision, we reverse the trial court's alternative declaration that chapter 8 applies, and we reverse the award of declaratory-judgment attorney's fees to Teresa. We remand this case back to the trial court for a determination of whether Kenneth's maintenance obligation should be modified or terminated by further orders of the trial court and to determine an award of attorney's fees, if any, for either of the parties.

/s/ Sue Walker
SUE WALKER
JUSTICE

EN BANC[11]

SUDDERTH, C.J., filed a dissenting opinion in which PITTMAN, J., and LEE ANN DAUPHINOT (Senior Justice, Retired, Sitting by Assignment) join.

MEIER, J., filed a concurring opinion.

BIRDWELL, J., joins Parts I-IV of the majority opinion—and Part V, with the exception of the disposition—but would affirm the trial court's judgment because Kenneth did not prove a material and substantial change in circumstances justifying further orders of the court, which is the statutory burden the parties incorporated into their contractual maintenance provision.

DELIVERED: June 7, 2018

---

[11]The constitution of the en banc court for this appeal consists of all members of the court and Senior Justice Lee Ann Dauphinot and Justice Rebecca Simmons (sitting by assignment). *See* Tex. R. App. P. 41.2(a).