

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00203-CV

———————————————

JOSEPH GULLIKSEN, Appellant

V.

BEVERLY JO GULLIKSEN A/K/A BEVERLY JO ROSING, Appellee

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 14-00440-367

Before Kerr, Birdwell, and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

This is an appeal from an order enforcing a provision of a mediated settlement agreement incorporated into a decree of divorce. The trial court ordered Joseph Gulliksen ("Husband") to pay Beverly Jo Rosing ("Wife") $18,069 as reimbursement for 70% of her federal income tax liability incurred as a result of the liquidation of funds in Husband's pension plan. Husband contends that the court erred (1) by enforcing the decree's reimbursement provision when Wife failed to comply with conditions precedent, (2) by materially altering the terms of the divorce decree, and (3) in the alternative, by miscalculating the amount owed to Wife. We reverse and render.

## I. BACKGROUND

The facts pertinent to this appeal are undisputed. Husband and Wife entered into a mediated settlement agreement which was incorporated into their October 1, 2015 divorce decree. The decree awarded Wife 100% of the total vested balance of Husband's pension plan ("Plan") and required her to withdraw those funds (with a request to the Plan administrator to withhold up to 25% for estimated federal income taxes) and to deliver the amount received into her attorney's trust fund account. Wife's attorney was required to use those funds to pay certain specified debts owed by Husband and Wife, and then to distribute the remainder, 30% to Wife and 70% to Husband. The decree also allocated the federal income tax liability resulting from liquidating the Plan funds:

2

As part of the division of the marital estate, [Husband] is ORDERED to reimburse [Wife] for 70% of the income taxes incurred by [Wife] as a result of the liquidation of the funds in the Plan. The amount of such income tax liability will be determined as follows:

> For the year in which such liquidation occurs, [Wife] will have two (2) separate draft income tax returns prepared by a licensed income tax preparer: one draft which includes the taxable amount of funds liquidated from the Plan as income and one draft which does not include such liquidated funds as income. [Wife] shall provide copies of both draft income tax returns to [Husband] . . . on or before June 1 of the year following the year in which such liquidation occurs. . . . [Husband] is ORDERED to reimburse [Wife] in an amount which equals 70% of the difference in income tax liability between these two draft income tax returns.

According to the briefing in this case, the Plan was liquidated in 2016 and so Wife's deadline to provide the two draft tax returns was June 1, 2017.

Wife, who remarried in 2016, engaged H&R Block to prepare the two draft tax returns. The first draft tax return, which Wife filed with the Internal Revenue Service, was a return filed jointly with her new husband, Keven Rosing. That return included Rosing's wage income, Wife's wage income, Wife's social security disability income, and $101,421, which represented the liquidated Plan funds. The second draft tax return also purported to be a joint return but included only Wife's wage income. It therefore differed from the first draft tax return not only by omitting the liquidated Plan funds, but also by omitting Rosing's income and Wife's social security disability income.

Wife sent these two draft tax returns to Husband before the June 1, 2017 deadline. Husband acknowledged their receipt but informed Wife that he needed a

3

draft tax return including only her income (not Rosing's) and the liquidated Plan funds. Husband and Wife exchanged a series of text messages concerning the required draft tax returns, and Wife returned to H&R Block several times to have new draft tax returns prepared, but "each time they got it wrong."

Wife acknowledged at the trial court hearing that she understood, at least by that time, that the two draft tax returns required by the divorce decree were to be exactly the same except that one would include the liquidated Plan funds and one would not. She also acknowledged that she did not send correct versions of the two required draft tax returns on or before June 1, 2017 and, even at the time of the hearing in February 2020, she had not provided two such drafts. Instead, she retained a forensic accountant to determine how much Husband owed her under the reimbursement provision of the divorce decree.

Larry Settles, Wife's accounting expert, testified that the draft tax returns prepared by H&R Block were incorrect. But he was not hired to prepare correct draft returns. Rather, he was asked simply to calculate the difference between Wife's income tax liability including the liquidated Plan funds and her liability excluding those funds. He accomplished that task in September 2019, which he testified was the first time the correct calculations were made. Settles concluded that the difference in Wife's income tax liability was $25,813.85 and that 70% of that sum was $18,069.70.

4

Husband testified that he received Settles's expert report in September 2019—over two years after the June 1, 2017 deadline—but that he had never received two draft tax returns fulfilling the divorce decree requirement. He acknowledged that he had not reimbursed Wife for any portion of the tax liability resulting from the liquidated Plan funds and testified that he believed she had waived her right to that reimbursement by failing to provide the required draft returns.

The trial court found that Wife "is entitled to reimbursement from [Husband] in the amount of $18,069.00, which represents 70% of the federal income taxes incurred by [Wife] in connection with the liquidation of the funds in the Plan as set forth in the Final Decree of Divorce." It accordingly granted Wife judgment for that amount.

## II. ISSUES

Husband raises three issues on appeal: (1) the trial court erred by enforcing the reimbursement provision when Wife did not comply with conditions precedent necessary to trigger Husband's obligation to pay; (2) the trial court materially altered the terms of the divorce decree by refusing to credit tax withholdings against Husband's tax liability; and (3) in the alternative, the trial court miscalculated the amount owed to Wife by considering income in excess of that authorized by the divorce decree to calculate Husband's tax liability. For the reasons discussed below, we need only address issue one.

## III.  STANDARD OF REVIEW

We review a trial court's ruling on a motion to enforce a divorce decree for an abuse of discretion.  *In re C.F.*, 576 S.W.3d 761, 774 (Tex. App.—Fort Worth 2019, no pet.); *Murray v. Murray*, 276 S.W.3d 138, 143 (Tex. App.—Fort Worth 2008, pet. dism'd).  But we construe an unambiguous divorce decree as a matter of law.  *Chafin v. Isbell*, No. 02-10-00007-CV, 2011 WL 946653, at *4 (Tex. App.—Fort Worth Mar. 17, 2011, no pet.) (mem. op. on reh'g) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

## IV.  THE DRAFT TAX RETURN REQUIREMENT

### A.  PRINCIPLES OF CONTRACT CONSTRUCTION

"An agreed property division incorporated into a final divorce decree is treated as a contract and is controlled by the rules of construction applicable to ordinary contracts."  *Howard v. Howard*, 490 S.W.3d 179, 184 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citing *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986)).  The court's task is to give effect to the parties' intention as expressed in the agreement.  *Waldrop v. Waldrop*, 552 S.W.3d 396, 407 (Tex. App.—Fort Worth 2018, no pet.) (citing *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012)).  To accomplish that task, we give effect to the entire agreement so that none of its provisions are rendered meaningless.  *Id.*; *Howard*, 490 S.W.3d at 184.  In addition, "[w]e will not construe contracts to produce an absurd result when a reasonable alternative construction exists."  *Markel Ins. Co. v. Muzyka*, 293 S.W.3d 380, 387 (Tex.

App.—Fort Worth 2009, no pet.); *accord S. Cty. Mut. Ins. v. Sur. Bank, N.A.*, 270 S.W.3d 684, 689 (Tex. App.—Fort Worth 2008, no pet.).

Contract construction begins with the express language of the agreement. *See Perry v. Perry*, 512 S.W.3d 523, 527–28 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)). "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Coker*, 650 S.W.2d at 393. An agreement is not ambiguous merely because the parties offer different interpretations of its language. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997); *Waldrop*, 552 S.W.3d at 408. It is ambiguous only if its language is "susceptible to two or more *reasonable* interpretations." *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998) (emphasis added); *see Waldrop*, 552 S.W.3d at 408.

## B. CONSTRUING THE DIVORCE DECREE

### 1. The Parties' Positions

Husband contends that the reimbursement provision required Wife to use a licensed tax preparer to prepare two draft federal income tax returns that included only her income (not Rosing's) and that differed only in that one would include the taxable amount of the liquidated Plan funds and the other would not. In addition, Wife was required to furnish those draft tax returns to Husband on or before June 1, 2017. He urges that Wife did not comply with any of these requirements.

7

Wife, on the other hand, contends that she was not required to use a "licensed income tax preparer" because that term was not defined in the decree and has no commonly understood meaning. She also contends that the decree required only that she furnish one draft tax return that includes the liquidated Plan funds and one that does not, not that those drafts must otherwise be the same or that they could not include Rosing's income. Based on this construction of the decree, Wife urges that she complied with the reimbursement provision by sending Husband two admittedly incorrect and dissimilar draft tax returns, one of which was a joint return that included Rosing's income, before the June 1, 2017 deadline.

## 2. Mirror Image Draft Tax Returns

We first consider whether Wife was required to provide draft returns differing only in the inclusion or exclusion of the liquidated Plan funds—what the parties and the trial court referred to as "mirror image" draft tax returns. In keeping with the principles stated above, we begin with the express language of the decree. *See Italian Cowboy Partners*, 341 S.W.3d at 333; *Perry*, 512 S.W.3d at 527–28.

The reimbursement provision identified Husband's obligation—"to reimburse [Wife] for 70% of the income taxes incurred by [Wife] as a result of the liquidation of the funds in the Plan." It then provided that "[t]he amount of such income tax liability will be determined" by Wife having "two (2) separate draft income tax returns prepared . . . one draft which includes the taxable amount of funds liquidated from the Plan as income and one draft which does not include such liquidated funds as

8

income." The amount that Husband was obligated to pay Wife was then defined as "an amount which equals 70% of the difference in income tax liability between these two draft income tax returns."

Wife's construction of the reimbursement provision focuses solely on the language that required her to provide one draft tax return that included funds from the Plan liquidation as income and one draft that did not include those funds as income. She contends that because the decree did not say anything about the remaining content of the draft tax returns, there was no requirement that they otherwise be similar or "mirror images." This argument contravenes two bedrock principles of construction—that the decree be construed as a whole so that no provision is rendered meaningless and that the decree be construed to avoid an absurd result. *See Waldrop*, 552 S.W.3d at 407; *Muzyka*, 293 S.W.3d at 387.

It is clear from the reimbursement provision, and the decree as a whole, that Wife's obligation to provide Husband with the two draft tax returns was no idle exercise. On the contrary, those draft tax returns were specifically identified as the means by which the parties were to quantify Husband's obligation. The purpose of the draft tax return requirement was expressed in its introductory sentence: "The amount of [Husband's] income tax liability will be determined as follows: . . . ." And that purpose was reiterated in the concluding sentence: "[Husband] is ORDERED to reimburse [Wife] in an amount which equals 70% of the difference in income tax liability between these two draft income tax returns."

9

Again, Husband's obligation was to reimburse Wife "for 70% of the income taxes incurred by [Wife] *as a result of the liquidation of the funds in the Plan.*" [Emphasis added.] The plain, unambiguous language of the decree established that the purpose of providing the two draft tax returns was to furnish the method to determine the amount Husband owed Wife, which necessarily included determining the amount of income taxes Wife incurred as a result of liquidating the Plan funds. And, the amount of income taxes so incurred could only be determined by comparing two draft tax returns that differ *only* in the inclusion or exclusion of the liquidated Plan funds as income. Any other deviation between the two would yield a difference in tax liability that was not necessarily attributable to the liquidated Plan funds.

It is apparent, then, that Wife's interpretation of the reimbursement provision—which would permit her to furnish draft tax returns that incorporated different elements of income in addition to the liquidated Plan funds—would render the provision meaningless because the draft tax returns would be of no use in determining the amount Husband was required to pay. In fact, Wife tacitly admits in her brief that the draft tax returns she gave Husband did not fulfill the purpose for which they were required: "Because the two tax returns prepared by or on behalf of Wife were not comparable, the trial court needed additional evidence to determine this amount."

In addition to rendering portions of the divorce decree meaningless, Wife's construction would lead to an unreasonable, if not absurd, result. Under that

10

construction, Wife could trigger Husband's duty to pay by giving him two draft tax returns from which he could not determine the amount he owed.

The unreasonableness of Wife's construction is also illustrated by the two draft returns that she contends satisfied her duty under the reimbursement provision. One draft included only her wage income; the other included her wage income, social security disability income, Rosing's wage income, and the liquidated Plan funds. It is readily apparent that the difference in tax liability between the two included differences attributable to Wife's social security disability income and Rosing's wage income. But if those drafts were sufficient to comply with the reimbursement provision, then that same provision would have required Husband to pay "70% of the difference in income tax liability between these two draft income tax returns," including the amounts not attributable to the liquidated Plan funds. Most certainly this is not what the parties intended, but it would be the necessary result of Wife's construction of the decree.

While the parties offer differing interpretations of the reimbursement provision, that provision is not ambiguous because Wife's interpretation is not reasonable. *See Kelley–Coppedge*, 980 S.W.2d at 465; *Waldrop*, 552 S.W.3d at 408. We conclude, as a matter of law, that requiring Wife to furnish "one draft [tax return] which includes the taxable amount of funds liquidated from the Plan as income and one draft which does not include such liquidated funds as income" means that the drafts were to differ only in that stated respect. Only by isolating this one variable

11

could the drafts serve their purpose of identifying "the income taxes incurred by [Wife] *as a result of the liquidation of the funds in the Plan*" and, thus, the amount Husband was required to pay.  [Emphasis added.]

### 3.  Including Rosing's Income

We next consider whether providing a draft tax return that included Rosing's income complied with the reimbursement provision.  Wife urges that it did because the decree was silent on whether her returns could or could not include her new spouse's income.  We disagree.

Wife's accounting expert testified that she had two options for filing her 2016 income tax return—jointly with Rosing or married filing separately.  Those options do not, however, apply to her duty under the reimbursement provision.  That duty was to provide Husband with two *draft* tax returns from which the parties could calculate *Wife's* tax liability resulting from liquidating the Plan funds.  The use of the word "draft" demonstrates that these documents were distinct from whatever tax return Wife ultimately filed with the IRS.  *See Hernandez v. State*, 614 S.W.3d 760, 765 (Tex. Crim. App. 2019) (Slaughter, J., dissenting) (distinguishing between a governmental record and a draft governmental record).  And the fact that they were to be used to determine *Wife's* tax liability resulting from the liquidated Plan funds precluded the use of a draft that also encompassed anyone else's tax liability.

As a result, while Wife was free to file a joint return with the IRS, providing Husband a joint tax return did not comply with her obligation under the

12

reimbursement provision. On the contrary, the unambiguous language of the decree required that she provide one draft tax return including only her own income plus the liquidated Plan funds and one draft tax return including only her own income.

## C. APPLYING THE CONSTRUCTION TO THE FACTS

It is undisputed that Wife did not send Husband two draft tax returns, each including only her own income and differing only in their inclusion or exclusion of the liquidated Plan funds, on or before June 1, 2017. Wife therefore did not fulfill her obligation under the reimbursement provision. The divorce decree clearly and unambiguously declared the consequence of that noncompliance:

> IT IS ORDERED that [Husband's] obligation to reimburse [Wife] for federal income taxes, as set forth above in this section, shall be waived in the event [Wife] does not present the two draft income tax returns to [Husband] on or before June 1 of the year following the year in which such liquidation of the funds in the Plan occurs, as required above.

Wife's failure to comply with her obligation to present the required draft tax returns relieved Husband of his obligation to reimburse her. The trial court therefore abused its discretion by finding that Wife was entitled to reimbursement and by granting her judgment against Husband in the amount of $18,069.

Issue one is sustained. As a result, we need not address Husband's additional issues on appeal.

## V. CONCLUSION

The order of the trial court is reversed and we render judgment that Wife take nothing on her petition to enforce the reimbursement provision of the divorce decree.

13

/s/ Brian Walker

Brian Walker
Justice

Delivered:  May 6, 2021