Charles Wayland GILES, Appellant,

v.

Judy Kaye GILES, Appellee.

No. 2–90–111–CV.

Court of Appeals of Texas,
Fort Worth.

April 21, 1992.

Teresa O. Blanton, Fort Worth, for appellant.

Cheril S. Hardy, Fort Worth, for appellee.

Before JOE SPURLOCK, II, HILL and MEYERS, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This is a divorce case in which the husband, Charles Wayland Giles, and his wife, Judy Kaye Giles, reached an agreement dividing the community estate. This agreement was announced in open court and dictated into the record. Subsequently, Charles refused to sign the "Agreed De-

cree of Divorce" or "Agreement Incident to Divorce," and withdrew his consent to the agreement. Nonetheless, the trial court signed the divorce decree, as approved by Judy but not by Charles.[1]

We affirm the trial court's judgment granting the divorce, dividing the property, and awarding contractual alimony to Judy. We reverse the trial court's order awarding attorney's fees on appeal to Judy and requiring Charles to post a cash bond of $7,500, and render judgment that Judy take nothing regarding her claim for attorney's fees on appeal.

■■■■ In his first point of error, Charles contends the trial court erred in signing the divorce decree after Charles had withdrawn his consent to the agreement.

On August 11, 1989, the parties and their attorneys appeared in open court to present the consent agreement to the judge for her approval. The parties were sworn as witnesses and testified they approved the terms of the consent agreement, as read into the record by their attorneys. At the conclusion of the hearing the court stated the divorce was granted, effective immediately, and that the agreement entered into by Charles and Judy was approved. The court further stated that Judy's attorney would:

> [P]repare the divorce decree, which encompasses this agreement that's read into the record today, and then [Charles's attorney] will approve that decree, and it will not require the signatures of either one of you. It will just be the two attorneys, since it's all put on the record, and then they will bring it to the Court for signature by a Judge.
>
> So as far as the two of you are concerned, your divorce is granted today.

The court made the following notation on the docket sheet:

> 8–11–89 Π & Δ in person & by atty. Agreement reached. Divorce granted. Property divided according to terms

read into record. All arguments of parties approved & ordered ([Wife's attorney] to prepare order) VSK[2]

On February 5, 1990, Charles notified the court that he no longer consented to the division of the community estate and the provisions of alimony as set forth in the statement of facts from the August 11, 1989 hearing. The trial court disregarded Charles's attempted repudiation of his consent to the agreement, and on February 5, 1990 signed the divorce decree, which tracks the terms of the agreement entered into by the parties on August 11, 1989.

At Charles's request the trial court made findings of fact and conclusions of law. Listed below are the pertinent findings of fact:

> 5. That the parties JUDY KAYE GILES, Petitioner, and CHARLES WAYLAND GILES, Respondent, represented to the Court that they had entered into a complete and final agreement which resolved all issues in their divorce matter then pending.
>
> 6. That the Court advised both parties to listen carefully to the agreement read into the record and said agreement was read into the record before the parties and the Court.
>
> . . . .
>
> 11. That the party, CHARLES WAYLAND GILES, Respondent, further agreed before the Court to pay directly to JUDY KAYE GILES, Petitioner, the sum of Four Hundred Fifty and No/100 Dollars ($450.00) per month as alimony for four (4) years with the first payment beginning on September 1, 1989 and to continue on the first (1st) day of each month thereafter for a total of forty-eight (48) payments.
>
> . . . .
>
> 15. That Respondent, CHARLES WAYLAND GILES, testified, when questioned more thoroughly regarding the payment of alimony, that he under-

---

1. The trial court later entered an "Order Correcting Judgment Nunc Pro Tunc" which eliminated an incorrect provision requiring Charles to maintain his life insurance for the benefit of Judy.

2. The Hon. V. Sue Koenig presided at the August 11, 1989 hearing.

stood that as a result of entering into the agreement, he would be legally obligated to pay his wife, JUDY KAYE GILES, Petitioner, the amount of Four Hundred Fifty and No/100 Dollars ($450.00) per month for forty-eight (48) months.

16. That Respondent acknowledged, when repeatedly questioned by his attorney, that he knew a Court could not order him to pay alimony under Texas law but that he agreed to do so in part because of the long term marriage and to offer his wife a means for an education and support.

. . . .

18. The Respondent, CHARLES WAYLAND GILES, asked this Judge to approve the entire agreement two (2) times during the hearing.

. . . .

21. That the Court granted the divorce effective immediately and approved the agreement entered into.

Charles claims that the withdrawal of his consent sufficiently nullified his prior agreement with the terms of the settlement, and prohibited the trial judge from signing the divorce decree. As noted by Charles, a party's consent must exist at the very moment the trial court undertakes to make the agreement the judgment of the court. *Burnaman v. Heaton,* 150 Tex. 333, 240 S.W.2d 288, 291 (1951). A party may revoke his consent to settle a case any time before judgment is rendered. *Samples Exterminators v. Samples,* 640 S.W.2d 873, 874–75 (Tex.1982) (per curiam); *Quintero v. Jim Walter Homes, Inc.,* 654 S.W.2d 442, 444 (Tex.1983). Without consent, an agreed judgment is void. *Samples,* 640 S.W.2d at 875.

The key question in the instant case is: When was judgment rendered? Charles argues that rendition occurred when the written judgment was finally signed by the trial court. Judy maintains the judgment was rendered when the trial judge officially announced in open court her decision to accept the parties' agreement.[3]

The Texas Supreme Court has stated that "a judgment's 'rendition is the judicial act by which the court settles and declares the decision of the law upon the matters at issue.'" *Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 58 (Tex.1970), quoting *Coleman v. Zapp,* 105 Tex. 491, 151 S.W. 1040, 1041 (1912). In *Comet,* the supreme court further explained:

> [I]n *Knox v. Long,* 152 Tex. 291, 257 S.W.2d 289, at 292 (1953), we quoted Freeman on Judgments as stating that *a judgment is "'rendered' when the decision is officially announced either orally in open court* or by memorandum filed with the clerk." We then quoted with approval from *Appeal of Bulkeley,* 76 Conn. 454, 57 A. 112, 113, as follows:
>
> > "A judgment is in fact rendered whenever the trial judge *officially announces his decision in open court,* or out of court signifies to the clerk, in his official guidance—whether orally or by written memorandum—the sentence of the law pronounced by him in any cause."

*Comet,* 450 S.W.2d at 58–59 (emphasis added) (footnote omitted). The Texas Supreme Court re-addressed this issue in *Reese v. Piperi,* 534 S.W.2d 329 (Tex.1976), wherein the Court stated:

> The rendition of judgment is a present act, either by spoken word or signed memorandum, which decides the issues upon which the ruling is made. The opportunities for error and confusion may be minimized if judgments will be rendered only in writing and signed by the trial judge after careful examination. Oral rendition is proper under the present rules, but orderly administration

---

**3.** It is undisputed that Charles and Judy complied with Rule 11 of the Texas Rules of Civil Procedure inasmuch as the agreement was made in open court, approved by the trial judge, and entered onto the docket sheet as the agreement of the parties. This Rule provides:

> Unless otherwise provided in these rules, no agreement between attorneys or parties touch-

ing any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, *or unless it be made in open court and entered of record.*

TEX.R.CIV.P. 11 (emphasis added). Rule 11 applies to settlement agreements and consent judgments. *See Kennedy v. Hyde,* 682 S.W.2d 525, 528 (Tex.1984).

requires that form of rendition to be in and by spoken words, not in mere cognition, and to have effect only insofar as those words state the pronouncement to be a present rendition of judgment. *Id.* at 330.

In support of his position that judgment was not rendered until it was actually signed by the trial court, Charles relies upon three cases: *Burnaman*, 240 S.W.2d at 288; *Buffalo Bag Co. v. Joachim*, 704 S.W.2d 482, 484 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); and *Carter v. Carter*, 535 S.W.2d 215 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). Judy has only addressed the applicability to the instant case of *Burnaman;* nonetheless, we have carefully reviewed the facts in all three cases and find they are distinguishable from the case at bar.

In *Burnaman*, the attorneys for the parties appeared in open court (without their clients) and announced a settlement agreement. The next day, the court was informed by the defense attorney that plaintiff "was trying to back out on the settlement." One day later, March 23, 1949, the attorneys again appeared in open court (without their clients) and announced the specific terms of the settlement agreement; at that time the court made a docket notation stating this fact. *Burnaman*, 240 S.W.2d at 290. The court subsequently held a hearing on defendant's motion for judgment, and entered judgment in accordance with the terms of the agreement. *Id.* The Texas Supreme Court reversed, holding the trial court erred in rendering the March 23rd judgment, because the court at that time had been informed that one of the parties no longer consented to the agreed judgment. *Id.*, 240 S.W.2d at 291.

The factual situation in *Burnaman* is dissimilar to that in the case at bar because Charles has never alleged that he withdrew his consent prior to the August 11, 1989 appearance by the parties and their attorneys in open court, wherein the terms of the agreement were dictated into the record and were approved by the trial court. In fact, language from *Burnaman* actually supports Judy's position that judg-

ment was rendered on August 11, 1989. In *Burnaman*, the attorneys announced the terms of the agreement to the trial court on March 23, 1949. The Texas Supreme Court held that: "The important and controlling question to be determined is whether the judgment *rendered* by the court on March 23rd should be allowed to stand." *Burnaman*, 240 S.W.2d at 291 (emphasis added).

In *Buffalo Bag*, the parties reached a settlement agreement, the terms of which were dictated into the record. *Buffalo Bag*, 704 S.W.2d at 483. As in our case, the trial court carefully questioned both sides as to their willingness to enter into the settlement agreement. *Id.* The opinion states that: "[T]he trial court approved the settlement and noted on the docket sheet 'Judgment to be entered accordingly.'" *Id.* After the appellant subsequently claimed the proposed written judgment did not reflect the intent of the parties, the trial court signed a written judgment, apparently corresponding with the oral agreement. *Id.* The dispositive issue on appeal was whether the trial court rendered judgment at the hearing during which the terms of the agreement were dictated into the record. The Houston Court held that the docket entry language, "Judgment to be entered accordingly," indicated that further, future action was necessary by the court; therefore, judgment had not been rendered at the hearing. *Id.* at 484. The appellate court also cited *Burnaman* as standing for the proposition that had the trial court specified the terms of the judgment on the docket along with the words "decree to be entered," rendition would have occurred. *Id.* at 484.

A review of the facts in the instant case indicates a different set of facts from those in *Buffalo Bag*. As stated previously, the trial judge granted the divorce to Charles and Judy, effective immediately, and stated that the parties' agreement was approved. Additionally, the signed docket notation affirmatively grants the divorce and states the property is divided according to the terms read into the record. Lastly, at the hearing the court specified that the divorce

decree will not require the signatures of either of the parties, only the attorneys. We find that these actions clearly demonstrate that the only anticipated future event in the case at bar was the mere reduction to writing and the signatures of the attorneys and the trial court. This sufficiently distinguishes our fact situation from *Buffalo Bag.*

Further, we do not find *Carter v. Carter* supports Charles's position because in that case there is absolutely no indication the parties were present when the terms of the settlement agreement were dictated and recorded by the court reporter. *Carter,* 535 S.W.2d at 217. Neither is there any showing regarding whether the trial court made any pronouncements or conclusions at the hearing, as is evidenced in our case. Lastly, the opinion does not state whether a docket entry was made by the trial court, as was done in the case of Charles and Judy.

We find guidance in *Samples,* 640 S.W.2d at 875. In *Samples,* on May 29, 1981 the terms of the settlement agreement were dictated into the record in open court, and agreed to by both parties. *Id.* at 874. At the conclusion of the hearing, the trial judge stated he "approves" the settlement and hereby "orders all parties to sign any and all papers necessary to carry out this agreement and to carry out the agreement that was made and dictated into the record." *Id.* The next day, one of the parties attempted to revoke his consent to settle. *Id.* The Texas Supreme Court held that the trial court rendered judgment in open court on May 29th, before the attempted revocation of consent, *id.* at 875, and further commented: "In the instant case, after the parties voiced their approval of the settlement dictated in open court, the trial court rendered judgment by ordering them to sign and follow the agreement." *Id.* *Compare Galerie D'Tile, Inc. v. Shinn,* 792 S.W.2d 792, 792–94 (Tex. App.—Houston [14th Dist.] 1990, no writ) (Judgment was rendered at hearing during which the parties voiced their approval of the settlement dictated in open court, and trial court announced, "signed and entered this, the 19th day of October, 1987") *with*

*Intercoastal Warehouse v. Clear Lake Nat. Bank,* 795 S.W.2d 294, 294–96 (Tex. App.—Houston [14th Dist.] 1990, writ dism'd w.o.j.) (Judgment was *not* rendered at hearing during which parties voiced their approval of the settlement dictated in open court, and trial court noted terms of settlement on docket sheet and instructed attorneys to prepare and submit a judgment within thirty days—appellate court held trial judge did not make any pronouncements indicating a present intention to render judgment, and notation on docket sheet stating, "[j]udgment and other documents to be in within 30 days" indicated that further, future action would be necessary).

We hold that judgment in the instant case was rendered on August 11, 1989 when the trial judge officially pronounced her decision in open court, granted the divorce, effective immediately, approved the parties' settlement agreement, and made a signed docket entry to the same effect. No further, future action was necessary by the court for rendition to occur. Because Charles's attempted repudiation of his consent to the settlement agreement was filed after judgment was rendered, the repudiation was ineffective and the trial court did not err in signing the divorce decree. Charles's first point of error is overruled.

■ In his second point of error, Charles alleges the trial court erred in ordering him to pay non-consensual alimony to Judy, for a period of forty-eight months. In the order correcting final judgment nunc pro tunc, the trial court stated as follows:

ALIMONY

The Court finds that the parties have executed an Agreement Incident to Divorce, which Agreement deals with the agreement of the parties for contractual alimony. The Court finds that same is in the best interest of the parties and does hereby ORDER same approved and incorporated herein by reference as if set forth herein; accordingly,

IT IS ORDERED AND DECREED that CHARLES WAYLAND GILES shall pay to JUDY KAYE GILES the sum of

Four Hundred Fifty and No/100 Dollars ($450.00) per month for contractual alimony. The first such payment shall be due and payable on the first (1st) day of September, 1989, and a like payment of $450.00 shall be due and payable on the first (1st) day of each month thereafter for a total of forty-eight (48) months, at which time this contractual alimony shall cease and this agreement shall be considered paid in full and further obligations null and void.

Alimony is defined as that term is defined and qualified under the Internal Revenue Code of 1954 as amended.

Charles asserts that because there was no separate written agreement or contract to pay alimony, signed by him, the trial court's inclusion of alimony in the divorce decree violated public policy and the Texas Statute of Frauds, TEX.BUS. & COM.CODE ANN. sec. 26.01 (Vernon 1987). Basically, Charles's argument is that section 26.01 prohibits enforcement of alimony in this case because no written contract was ever signed by the parties, and Charles's oral agreement to pay alimony for four years was not enforceable inasmuch as it could not be performed within one year.

Judy responds that the trial court did not judicially impose alimony, but simply signed a judgment which comported with the settlement agreement dictated into the record in open court. We agree. In the leading case of *Francis v. Francis*, 412 S.W.2d 29 (Tex.1967), the Supreme Court opined:

[A]limony which contravenes the public policy of the State is only those payments imposed by a court order or decree on the husband as a personal obligation for support and sustenance of the wife after a final decree of divorce.

From what has been said, it follows that obligations assumed by the husband in separation agreements or contracts to make payments for the support of the wife after a divorce decree becomes final, *are not obligations to pay alimony and do not violate the public policy of this State.*

*Id.* at 33 (emphasis added). The trial court may incorporate by reference into the written judgment the parties' separate agreement for contractual alimony. *Klise v. Klise*, 678 S.W.2d 545, 548 (Tex.App.—Houston [14th Dist.] 1984, no writ). Moreover, there is no reason the separate contractual agreement between the spouses must be in written form prior to the trial court's signing the written judgment—the judgment itself operates as the written manifestation of the parties' agreement. *See Mackey v. Mackey*, 721 S.W.2d 575, 578–79 (Tex.App.—Corpus Christi 1986, no writ). We overrule Charles's second point of error.

■ In his third and fourth points of error, Charles challenges the trial court's action in awarding to Judy's attorney the sum of $7,500.00, representing Judy's attorney's fees on appeal, and in ordering him to post a cash bond for this same amount, to cover these attorney's fees.

The divorce decree was signed by the trial court on February 5, 1990. On May 18, 1990, the court signed the "Order Correcting Judgment Nunc Pro Tunc," eliminating an incorrect provision requiring Charles to maintain his life insurance for the benefit of Judy. In these documents, the court stated that "each party shall be responsible for his or her own attorney's fees incurred as a result of legal representation in this case." On October 3, 1990, the trial court signed an "Order For Posting Of Cost Bond On Appeal," which recited that on June 25, 1990 the court held a hearing on the issue of attorney's fees on appeal. The order further provides:

*Bond*

IT IS ORDERED that the hearing on attorney's fees on appeal filed by Petitioner, JUDY KAYE GILES, be GRANTED. The Court so orders that CHERIL S. HARDY, attorney for Petitioner, is granted the sum of $5,000.00 for attorney's fees for appeal to the Court of Appeals and the additional sum of $2,500.00 for appeal to the Supreme Court of Texas.

IT IS FURTHER ORDERED that Appellant, CHARLES WAYLAND GILES,

shall post a $7,500.00 cash bond to cover Apellee's [sic] attorney's fees and costs expended or to be expended in this cause as set forth hereinabove.

Judy has not replied to these two points of error, other than to request that this Court require Charles to post the court-ordered bond for her attorney's fees, or in the alternative, that Charles be held in contempt of court for noncompliance with the trial court's October 3, 1990 order.

TEX.R.CIV.P. 329b(d) provides that a trial court has plenary power to make additional orders within thirty days after the judgment is signed, if no motion for new trial is filed.[4] Even assuming arguendo the trial court's plenary jurisdiction to make substantive orders (as opposed to correcting clerical errors as permitted by TEX R.CIV.P. 316) extended for thirty days after May 18, 1990, the court's plenary power expired on June 17, 1990, which was the thirtieth day following the order correcting judgment nunc pro tunc. Any order entered after this date would be a nullity. *Jackson v. Van Winkle*, 660 S.W.2d 807, 808 (Tex. 1983). Accordingly, we hold the trial court did not have jurisdiction on June 25, 1990 to award to Judy's attorney any fees for this appeal.

 Additionally, we hold the trial court lost jurisdiction to enter the order requiring Charles to post a $7,500.00 cash bond to cover these attorney's fees. TEX.R.APP.P. 46(c) provides that the trial court's power to increase or decrease the amount of the cost bond or deposit required shall continue for thirty days after the bond or certificate is filed. Charles posted a $1,000.00 cash deposit in lieu of cost bond on May 8, 1990, which became effective as to the order correcting judgment nunc pro tunc on May 18, 1990. *See* TEX.R.APP.P. 58(c). Thirty days from May 18, 1990 was June 17, 1990; thus, after this date the trial court lacked authority under Rule 46(c) to increase the amount of the cash bond.

We sustain points of error three and four and reverse the "Order For Posting Of

Cost Bond On Appeal." We render judgment that Judy take nothing regarding her claim for attorney's fees on appeal.

 Judy requests this Court assess damages on appeal against Charles, as permitted by TEX.R.APP.P. 84. Because we do not find that Charles has taken this appeal for delay and without sufficient cause, we deny Judy's request for damages.

In summary, we overrule Charles's points of error one and two, and affirm the trial court's "Order Correcting Judgment Nunc Pro Tunc." We sustain points three and four, and reverse the "Order For Posting Of Cost Bond On Appeal," and render judgment that Judy take nothing regarding her claim for attorney's fees on appeal. We deny Judy's request for damages under TEX.R.APP.P. 84.

Costs on appeal are assessed 75% against appellant, Charles Wayland Giles, and 25% against appellee, Judy Kaye Giles. *See* TEX.R.CIV.P. 139 and TEX.R.APP.P. 89.

granted by the court on April 16, 1990, no such motion or order appears in the appellate record.

---

**4.** Although Judy makes the statement in her brief that she filed a motion for new trial seeking appellate attorney's fees, which motion was