In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00048-CV**
_____

**IN THE MATTER OF THE MARRIAGE OF ROBERT LYALL MARTZ AND AMY GONZALEZ MARTZ**

On Appeal from the 414th District Court
McLennan County, Texas
Trial Cause No. 2019-2525-5

**MEMORANDUM OPINION**

In this appeal arising from a divorce proceeding, appellant Robert Lyall Martz ("Robert") challenges the trial court's Final Decree of Divorce awarding spousal maintenance to appellee Amy Gonzalez Martz ("Amy").[1] In seven issues on appeal, Robert argues the trial court erred by ordering him to pay spousal maintenance of $4,000 per month until October 2050; finding that the divorce decree was rendered when it entered the Order Granting Nunc Pro Tunc; finding that the spousal

---

[1]Under an order issued by the Supreme Court of Texas, this case was transferred to our Court from the Tenth Court of Appeals in Waco, Texas. *See* Tex. Gov't Code Ann. § 73.001.

1

maintenance award could be supported under a theory of contractual alimony; entering an Income Withholding Order; not requiring a reporter's record of the Nunc Pro Tunc hearing; and failing to grant a new trial in the interest of justice. We affirm the trial court's judgment in part and reverse and remand in part.

BACKGROUND

In July 2019, Amy filed an Original Petition for Divorce, in which she requested, among other things, that Robert pay post-divorce maintenance for a reasonable period in accordance with Chapter 8 of the Texas Family Code. Robert filed a Waiver of Service entering an appearance for all purposes, reserving the right to be notified of any hearing or trial, and requesting the trial court not to enter any orders or judgments not signed by him or without providing him prior written notice of the date, time, and place of any proceedings. On December 19, 2019, the trial court rendered a Final Decree of Divorce that Robert signed, approved, and consented to as to both form and substance.

The record shows that Robert agreed to the terms of the December 2019 Final Decree "to the extent permitted by law[.]" In the December 2019 Final Decree, the trial court found:

> the parties have entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance. To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract. The Court approves the agreement of parties as contained in this Final Decree of Divorce.

2

The trial court also found that Amy "is eligible for maintenance under the provisions of The Texas Family Code Chapter 8[,]" and ordered Robert to pay Amy $4,000 per month until the earliest of one of the following events: October 1, 2050, death of either party, or remarriage of Amy. The December 2019 Final Decree included a provision that ordered spousal maintenance to be paid from Robert's income and included an Order for Income Withholding for Spousal Maintenance. The December 2019 Final Decree provides that the parties

> acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets, and state that they have not signed by virtue to any coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce.

The same day the trial court rendered the December 2019 Final Decree, Amy filed a Motion for Judgment Nunc Pro Tunc, requesting the trial court award her a truck that she should have been awarded in the final decree. On January 22, 2020, the trial court entered an Order on Motion for Judgment Nunc Pro Tunc ("the January 2020 Nunc Order"), which Robert signed and approved as to form and substance, as evidenced by his signature on the January 2020 Nunc Order, which included Exhibit 1, a Final Decree that contains the exact language from the December 2019 Final Decree regarding spousal maintenance; however, Robert did not sign Exhibit 1. The same day Robert approved the January 2020 Nunc Order, Robert signed a Qualified Domestic Relations Order, which he approved and

3

consented as to both form and substance. The record shows that on January 24, 2020, the trial court sent Robert notice that it had signed and filed the January 2020 Nunc Order. In February 2020, the trial court entered an Amended Income Withholding for Support.

In August 2020, Robert filed a Motion for Further Orders or Motion to Modify Prior Orders, arguing that there was no written agreement or contract between the parties because he did not sign Exhibit 1, and the effect was that the January 2020 Nunc Order set aside the December 2019 Final Decree and no subsequent final judgment was ever entered. Robert argued Exhibit 1 to the January 2020 Nunc Order was improper because it ordered Robert to pay spousal maintenance in violation of section 8.054 of the Texas Family Code, and it is not an agreed judgment because Robert never signed it. Robert requested a new trial or a modification of the January 2020 Nunc Order to comply with section 8.054 because of a material and substantial change due to a drastic reduction in his income.

Amy filed an Original Answer entering a general denial. Robert filed a Motion to Terminate Income Withholding Order, arguing that the January 2020 Nunc Order nullified the December 2019 Final Decree containing the support order which was the basis of the Amended Income Withholding Order. According to Robert, since the trial court did not enter a subsequent decree of divorce, there is no valid spousal

support order in place to support the Amended Income Withholding Order, so it should be dissolved.

In October 2020, Amy filed a Motion to Sign Decree of Divorce. Robert filed objections to Amy's motion, arguing that he did not sign the decree or agree to its terms. Robert also filed a Second Amended Motion for Further Orders or Motion to Modify Prior Orders, in which he argued that Amy's Motion for Judgment Nunc Pro Tunc changed the property division in the December 2019 Final Decree and the modified proposed decree was never signed by the trial court or the parties. According to Robert, there is no written agreement or contractual agreement between him and Amy that requires him to pay spousal maintenance, and the modified proposed decree should not be entered because it ordered him to pay spousal maintenance in violation of section 8.054. Robert alternatively argued that if the trial court construed the January 2020 Nunc Order to be valid, it should be modified to reduce the amount of spousal maintenance to comply with Chapter 8 of the Family Code.

On October 27, 2020, the trial court conducted a hearing on Robert's Motion to Terminate Income Withholding Order. Robert's counsel argued that the January 2020 Nunc Order incorrectly made a material substantive change to the judgment that he did not agree to. Amy's counsel argued that the Motion for Judgment Nunc Pro Tunc was a motion to modify to correct the judgment to award Amy a truck that

was supposed to be awarded to Amy and had already been handed over to her. According to Amy's counsel, the attached decree to the Motion for Judgment Nunc Pro Tunc was identical except for the award of the truck, and Robert agreed to the decree twice. Robert's counsel argued that if the Motion for Judgment Nunc Pro Tunc was treated as a motion to modify, the trial court never entered a judgment and Robert did not sign the proposed judgment Amy sought to enter or consent to its terms. Robert's counsel argued that since Robert did not consent to the proposed judgment awarding Amy spousal maintenance for thirty years, the trial court should terminate the withholding order because the trial court did not have authority to order him to pay spousal maintenance based on a judgment that was never entered. Amy's counsel argued that Robert signed off on the January 2020 Nunc Order, which was tantamount to a Rule 11 Agreement. Robert's counsel argued Amy's Motion for Judgment Nunc Pro Tunc set aside the December 2019 Final Decree, there was no Rule 11 Agreement because Robert only signed an order stating that a future order might be entered but never was, Robert never signed a subsequent judgment, and he had the right to withdraw his consent. According to Robert's counsel, there was no agreed judgment for the trial court to enter and the parties agreed there was no valid judgment on file.

On November 3, 2020, the trial court entered a letter ruling finding that the final judgment, which was signed and filed on November 4, 2020, was rendered as

6

of the date of the January 2020 Nunc Order. Robert filed a Request for Findings of Fact and Conclusions of Law. The trial court issued Findings of Fact and Conclusions of Law concluding: Robert consented to the December 2019 Final Decree as evidenced by his signature; Amy's Motion for Judgment Nunc Pro Tunc was in legal effect a motion to modify because it sought to correct a judicial error; the January 2020 Nunc Order granted the motion to modify and rendered the modified judgment on that same date; Robert consented to the modification of the December 2019 Final Decree and rendition of the modified judgment as evidenced by his signature on the January 2020 Nunc Order; Robert did not withdraw his consent to the modified judgment until after the trial court rendered the modified judgment; and the November 2020 Final Decree constitutes entry of the final, modified judgment rendered by the trial court in January 2020.

Robert filed a motion for new trial, arguing, among other things, that the trial court should grant a new trial in the interest of justice. The trial court conducted a hearing on Robert's Motion for New Trial, during which Robert's counsel asked the trial court to grant a new trial on the issue of spousal maintenance. Robert testified that he and Amy were married for approximately twenty-five years, and he was not represented by legal counsel during the divorce. Robert testified that Amy told him if he signed the December 2019 Final Decree, they could work through the other issues later. Robert testified he was fifty-five years old, and the decree of divorce

7

required him to pay spousal maintenance of $4,000 per month until he was eighty-four. Robert explained that since signing the decree, his income has reduced by forty percent. Robert also explained that Amy is not permanently disabled, and she does not have any disabilities that prevent her from working. Robert testified that when he agreed to the December 2019 Final Decree, he was unaware the trial court could not order spousal maintenance for thirty years that could not be modified, and he asked the trial court to order a new trial to determine an appropriate award of spousal maintenance.

On cross-examination, Robert agreed that he had signed off on the January 2020 Nunc Order to modify the December 2019 Final Decree so Amy could have the truck. Robert agreed that the December 2019 Final Decree provided that the spousal maintenance terminates in 2050, if Amy remarries, or when either party passes away. Robert explained that he took Amy's word that they would work things out. Robert's counsel argued that the trial court should grant a new trial because the spousal maintenance award was burdensome and unconscionable. Amy's counsel argued that the parties contractually agreed to the spousal maintenance award in the December 2019 Final Decree, and the trial court should enforce that agreement. Robert's counsel argued that the December 2019 Final Decree was set aside, Robert never signed a subsequent decree, and he did not sign or consent to the November 2020 Final Decree. Robert's counsel also argued that the November 2020 Final

8

Decree, which erroneously states that it is contractual agreed spousal maintenance because the parties' signatures appear on the judgment, could not be fixed under the guise of a Nunc Pro Tunc. The trial court denied Robert's motion for new trial.

ANALYSIS

We first address Robert's second issue, in which he argues the trial court erred by finding that the rendition of the divorce decree occurred when it signed the January 2020 Nunc Order. We review a trial court's factual finding that a judgment was rendered to determine whether some probative evidence supports the finding. *Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex. 1986). Once the trial court determines that it rendered judgment, the question of whether the trial court corrected a judicial or clerical error in the judgment becomes a question of law. *Id.* "[A]n agreed divorce decree is a final judgment and must be appealed within the trial court's plenary power." *Lowery v. Lowery*, No. 01-06-00147-CV, 2017 WL 6520428, at *4 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, no pet.) (mem. op.). A trial court retains plenary power to modify a judgment within thirty days after the judgment is signed. Tex. R. Civ. P. 329b(d); *Matter of Marriage of Russell*, 556 S.W.3d 451, 454 (Tex. App.—Houston [14th Dist.] 2018, no pet.). A trial court can correct judicial mistakes, but such corrections can only be made within the trial court's plenary power over the judgment. *See Barton v. Gillespie*, 178 S.W.3d 121,

126 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex. 1973)).

While a trial court may correct clerical errors nunc pro tunc, trial courts cannot correct judicial errors nunc pro tunc. *City of Marshall v. Gonzales ex rel. Gonzales*, 107 S.W.3d 799, 804 (Tex. App.—Texarkana 2003, no pet.). When the trial court signed the December 2019 Agreed Final Decree, rendition of the judgment occurred, and an error in the rendition of judgment is always judicial error which may not be corrected by a nunc pro tunc judgment. *See Hernandez v. Lopez*, 288 S.W.3d 180, 187–88 (Tex. App.—Houston [1st Dist.] 2009, no pet.). A trial court has no nunc pro tunc power to correct or modify the entered judgment if the judgment entered is the same as the judgment rendered, regardless of whether the rendition was incorrect. *Id.* at 187 (citing *America's Favorite Chicken Co. v. Galvan*, 897 S.W.2d 874, 877 (Tex. App.—San Antonio 1995, writ denied)) (other citation omitted). To render a judgment nunc pro tunc, there must be some evidence that the judgment the trial court actually rendered is not correctly represented in the judgment signed and entered of record. *Galvan*, 897 S.W.2d at 877.

Here, the trial court corrected a judicial mistake regarding the division of property when it rendered the January 2020 Nunc Order. There is nothing in the record showing that the trial court rendered or intended to render judgment awarding Amy the additional truck before the trial court rendered the December 2019 Final

10

Decree. *See Lopez*, 288 S.W.3d at 187; *Galvan*, 897 S.W.2d at 878. In its findings of fact, the trial court found that Robert consented to the December 2019 Final Decree; Amy's Motion for Judgment Nunc Pro Tunc indicated that the December 2019 Final Decree erroneously awarded Robert the truck; it signed the January 2020 Nunc Order, which is identical to the December 2019 Final Decree except that it awarded the truck to Amy; Robert signed the January 2020 Nunc Order and approved it as to form and substance; judgment was rendered as of the date of the January 2020 Nunc Order; the trial court signed the November 2020 Final Decree, which is identical to the unsigned decree attached as Exhibit 1 to the January 2020 Nunc Order.

Based on its findings, the trial court concluded that Amy's Motion for Judgment Nunc Pro Tunc was in legal effect a motion to modify the judgment. The nature of a motion is determined by its substance and not the title. *Guion v. Guion*, 597 S.W.3d 899, 905 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *see also* Tex. R. Civ. P. 71. The nature of the relief Amy sought in her motion was to modify the December 2019 Final Decree to reflect the parties' agreement to award her the truck. The trial court correctly construed Amy's Motion for Judgment Nunc Pro Tunc as a motion to modify because a true motion for judgment nunc pro tunc is one that corrects clerical errors after the trial court has lost its plenary power. *See Owens-Corning Fiberglas Corp. v. Wasiak*, 883 S.W.2d 402, 404-05 (Tex. App. Austin—

11

1994, no writ); *see also Ferguson v. Naylor*, 860 S.W.2d 123, 126 (Tex. App.—Amarillo 1993, writ denied). Amy filed her Motion for Judgment Nunc Pro Tunc within thirty days after the trial court signed the December 2019 Final Decree, and the trial court signed the January 2020 Nunc Order when the trial court had plenary power over the December 2019 Final Decree. *See* Tex. R. Civ. P. 329b(d). While the January 2020 Nunc Order cannot be upheld as a judgment nunc pro tunc, it is still a valid judgment because the correction was made during the period within which the trial court still had plenary power over its judgment. *See Mathes v. Kelton*, 569 S.W.2d 876, 877-78 (Tex. 1978). Since the trial court had plenary power when it modified the December 2019 Final Decree, the January 2020 Nunc Order is not void. *See Pekar v. Pekar*, No. 09-14-00464-CV, 2016 WL 240761, at *5 (Tex. App.—Beaumont Jan. 21, 2016, no pet.) (mem. op.).

"Any change in a judgment made during the trial court's plenary power is treated as a modified or reformed judgment that implicitly vacates and supersedes the prior judgment, unless the record indicates a contrary intent." *Price Constr., Inc. v. Castillo*, 147 S.W.3d 431, 441 (Tex. App.—San Antonio 2004, no pet.) (citing *Wasiak*, 883 S.W.2d at 410–11); *see SLT Dealer Grp., Ltd. v. AmeriCredit Fin. Servs., Inc.*, 336 S.W.3d 822, 832 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citations omitted). Nothing in the record indicates that the trial court did not intend to vacate the December 2019 Final Decree. Rather, the record indicates that the trial

court intended for the January 2020 Nunc Order to vacate the December 2019 Final Decree, because it included an Exhibit that contained the exact same language as the December 2019 Final Decree, except that it awarded the truck to Amy, and the erroneous title of the Nunc Order also indicated the trial court's intent to modify and replace the December 2019 Final Decree. *See Castillo*, 147 S.W.3d at 441; *see also SLT Dealer Grp., Ltd.*, 336 S.W.3d at 832; *Quanaim v. Frasco Rest. & Catering*, 17 S.W.3d 30, 39 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). We conclude the January 2020 Nunc Order superseded the December 2019 Final Decree. *See Wasiak*, 883 S.W.2d at 411; *see also Allen v. Allen*, 646. S.W.2d 495, 496 (Tex. App.—Houston [1st Dist.] 1982, no writ) (explaining that second judgment does not have to contain language which specifically vacates the earlier judgment).

We also conclude there is some evidence to support the trial court's finding that the November 2020 Final Decree was rendered as of the date of the January 2020 Nunc Order. *See Escobar*, 711 S.W.2d at 232. "A judgment routinely goes through three stages: rendition, reduction to writing and judicial signing, and entry." *Henry v. Cullum Co., Inc.*, 891 S.W.2d 789, 792 (Tex. App.—Amarillo 1995, writ denied). A party may revoke his consent to a consent judgment any time before the judgment is rendered. *Sample Exterminators v. Samples*, 640 S.W.2d 873, 874-75 (Tex. 1982). "'A judgment is in fact rendered whenever the trial judge officially announces his decision in open court . . . in his official capacity for his official

13

guidance whether orally or by written memorandum the sentence of law pronounced by him in any cause.'" *Id.* at 875 (citation omitted). The rendition of the trial court's decision is the critical moment when the judgment becomes effective. *Araujo v. Araujo*, 493 S.W.3d 232, 235 (Tex. App.—San Antonio 2016, no pet.) (citation omitted). The trial court's written memorandum must evince a present act that effectively decides the issues before the court and "'must indicate the intent to render a full, final, and complete judgment at that point in time.'" *Matter of Marriage of Campero*, No. 13-20-00415-CV, 2022 WL 869807, at *3 (Tex. App.—Corpus Christi Mar. 24, 2022, no pet.) (mem. op.) (citation omitted). After rendition, "[a] judgment is 'entered' when it is recorded in the minutes of the trial court by a purely ministerial act of the trial court's clerk, thereby providing enduring evidence of the judicial act." *Araujo*, 493 S.W.3d at 235; *see Dunn v. Dunn*, 439 S.W.2d 830, 833 (Tex. 1969) (citation omitted) (stating that the finality of a judgment that settles the rights controverted by the parties is not affected by the fact that further proceedings that are merely incidental may be expressly provided for to carry it into full effect). "Rendition of judgment is not synonymous with the signing of a written judgment." *Roberts v. Wells Fargo Bank, N.A.*, 406 S.W.3d 702, 706 (Tex. App.—El Paso 2013, no pet.) (citing *Greene v. State*, 324 S.W.3d 276, 282 (Tex. App.—Austin 2010, no pet.)).

The trial court found that the November 2020 Final Decree constitutes entry of the final, modified judgment rendered by the trial court in January 2020. In January 2020, the trial court signed the January 2020 Nunc Order and ordered "that a Judgment Nunc Pro Tunc be entered as shown on the attached order, Exhibit 1." It was not until August 2020 that Robert complained that he did not sign or consent to Exhibit 1. The record shows that Robert consented to the terms of the December 2019 Final Decree and approved the January 2020 Nunc Order as to form and substance, which included Exhibit 1 that is an exact copy of the final decree entered and signed by the trial judge in November 2020. Robert's attempt to withdraw his consent after the trial court rendered judgment was too late. *See Samples*, 640 S.W.2d at 874-75; *Wright v. Wright*, No. 04-08-00175-CV, 2009 WL 331892, at *3 (Tex. App.—San Antonio Feb. 11, 2009, no pet.) (mem. op.).

Here, the January 2020 Nunc Order shows the trial court rendered judgment when it instructed the parties to enter a Judgment Nunc Pro Tunc as shown on the attached order, Exhibit 1. *See Samples*, 640 S.W.2d at 875; *Giles v. Giles*, 830 S.W.2d 232, 235–37 (Tex. App.—Fort Worth 1992, no writ). Since some evidence supports the trial court's finding that the rendition of the November 2020 Final Decree occurred when it signed the January 2020 Nunc Order, we overrule issue two. *See Escobar*, 711 S.W.2d at 232.

In issue one, Robert complains the trial court erred by ordering him to pay Amy court-ordered spousal maintenance of $4,000 per month until October 2050. Robert argues the trial court abused its discretion by ordering him to pay over one million dollars in spousal maintenance for approximately thirty years in violation of section 8.054 of the Texas Family Code. According to Robert, the evidence is legally and factually insufficient to support the trial court's findings regarding spousal maintenance. In issue three, Robert complains that the trial court erred by finding that the spousal maintenance award could be supported under a theory of contractual alimony because the evidence is factually and legally insufficient to support the trial court's finding that the parties entered into a written agreement. According to Robert, he did not sign or consent to the November 2020 Final Decree, and the trial court could not use the December 2019 Final Decree because it was set aside by the January 2020 Nunc Order. We will address issues one and three together since they both turn on whether the trial court erred by concluding that the parties had a contractual spousal maintenance agreement, and that Robert did not withdraw his consent until after the judgment was rendered.

We review the sufficiency of the evidence supporting a trial court's factual findings by applying the same standards that we use in reviewing legal and factual sufficiency of the evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review a trial court's conclusions of law as a legal

question. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). An agreed divorce decree is a contract subject to the usual rules of contract construction, and the judgment itself operates as the written manifestation of the parties' agreement. *Waldrop v. Waldrop*, 552 S.W.3d 396, 403, 404-05 (Tex. App.— Fort Worth 2018, no pet.). "When parties agree or stipulate that a maintenance provision in their divorce decree is enforceable as a contract, absent express language indicating that Chapter 8 governs the maintenance provision, courts will enforce the maintenance provision as a matter of contract law, independent of Chapter 8." *Id.* at 403.

A trial court may order spousal maintenance under Chapter 8 of the Texas Family Code under certain circumstances. *See* Tex. Fam. Code Ann. § 8.051. Texas law also permits parties to agree to contractual spousal maintenance that varies from Chapter 8 of the Texas Family Code. *See id.* § 7.006(a). Section 7.006 of the Texas Family Code provides that "spouses may enter into a written agreement concerning the division of property and the liabilities of the spouses and maintenance of either spouse." *Id.* Contractual spousal maintenance provided for in a divorce decree is an agreement pursuant to section 7.006 of the Texas Family Code, and therefore, it is a contract and not an agreement for spousal maintenance made pursuant to Chapter 8. *See In re Dupree*, 118 S.W.3d 911, 916 (Tex. App.—Dallas 2003, orig. proceeding). If the trial court finds the written agreement is "just and right," the terms are binding

on the court, and "[i]f the trial court approves the agreement, the court may set forth the agreement in full or incorporate the agreement by reference in the final decree." Tex. Fam. Code Ann. § 7.006(b).

Chapter 8 does not apply to a spousal maintenance provision in a divorce decree that restates a parties' contractual spousal maintenance agreement. *See Kee v. Kee*, 307 S.W.3d 812, 814 (Tex. App.—Dallas 2010, pet. denied); *McCollough v. McCollough*, 212 S.W.3d 638, 646 (Tex. App.—Austin 2006, no pet.). The trial court's approval of a parties' contractual spousal maintenance agreement and incorporation into the final decree does not transform the contractual payments into prohibited court-ordered spousal maintenance. *See Cardwell v. Sicola-Cardwell*, 978 S.W.2d 722, 724 (Tex. App.—Austin 1998, pet. denied). Nor does the mere reference to Chapter 8 in the divorce decree transform the contractual spousal maintenance obligation into a court-ordered maintenance obligation under Chapter 8. *See Ammann v. Ammann*, No. 03-09-00177-CV, 2010 WL 4260955, at *2 (Tex. App.—Austin Oct. 28, 2010, no pet.) (mem. op.). In the absence of fraud or mistake, and if the agreement is free from ambiguity, courts will enforce the parties' agreement regardless of whether the parties have contracted wisely or foolishly or whether it creates a hardship. *Sorrels v. Sorrels*, 592 S.W.2d 692, 696 (Tex. Civ. App.—Amarillo 1979, writ ref'd n.r.e.) (citation omitted); *see Hallsted v. McGinnis*,

483 S.W.3d 72, 77 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Schwartz v. Schwartz*, 247 S.W.3d 804, 806 (Tex. App.—Dallas 2008, no pet.).

Our primary concern in interpreting an agreed divorce decree is to ascertain and give effect to the intent of the parties as it is expressed in the agreement, and if the agreement is not ambiguous, we will construe it as a matter of law. *Hallsted*, 483 S.W.3d at 75; *Lee v. Lee*, No. 02-14-00064-CV, 2015 WL 601054, at *3 (Tex. App.—Fort Worth Feb. 12, 2015, no pet.) (mem. op.). In determining whether the parties intended for Chapter 8 to apply to their agreed maintenance provision, courts examine whether the provision sets forth the criteria to trigger Chapter 8 spousal support and imposes a support obligation that is within Chapter 8's limit regarding the amount and duration of support. *Waldrop*, 552 S.W.3d at 403; *see McCollough*, 212 S.W.3d at 646.

The record shows that Robert agreed to the terms of the December 2019 Final Decree "to the extent permitted by law[.]" In the December 2019 Final Decree, the trial court found that the parties entered into a written agreement, approved the decree as to both form and substance and stipulated the agreement is enforceable as a contract. Although the December 2019 Final Decree includes a finding that Amy "is eligible for maintenance under the provisions of the Texas Family Code chapter 8[,]" the parties agreed that Robert would pay maintenance for a period that exceeds the limits of Chapter 8. Additionally, the December 2019 Final Decree provides that

19

the parties voluntarily signed the final decree believing it to be a just and right division of the marital debt and assets and claiming that they did not sign due to any coercion, duress, or other agreement. The record further shows that Robert approved the January 2020 Nunc Order as to form and substance, and we have already concluded that Robert's attempt to withdraw his consent from the January 2020 Nunc Order was too late because it was after the trial court rendered judgment.

Robert's spousal maintenance would have violated Chapter 8 from its inception because it allowed for payments over a period of thirty years. *See* Tex. Fam. Code Ann. § 8.054(a)(1)(B); *McCollough*, 212 S.W.3d at 646. This term of the spousal maintenance agreement convinces us that the parties intended to create the sort of contractual spousal maintenance obligation that is permitted outside the context of Chapter 8 and not a maintenance obligation governed under Chapter 8. *See McCollough*, 212 S.W.3d at 646. Based on this record, we conclude that the parties intended to create a contractual spousal maintenance obligation outside the context of Chapter 8 and that Robert's spousal maintenance obligation is not court-ordered spousal maintenance governed by Chapter 8. *See* Tex. Fam. Code Ann. § 7.006(a); *In re Dupree*, 118 S.W.3d at 916. Applying controlling rules of construction and existing case law in conducting our de novo review of the trial court's conclusions of law, we hold that the trial court did not err by concluding the parties consented to the judgment that contained the parties' contractual spousal

20

maintenance agreement. *See* Tex. Fam. Code Ann. § 7.006(b); *Waldrop*, 552 S.W.3d at 403. Accordingly, the trial court did not err by approving the parties' contractual spousal maintenance agreement incorporated in the November 2020 Final Decree. *See Schwartz*, 247 S.W.3d at 806; *Cardwell*, 978 S.W.2d at 724; *Sorrels*, 592 S.W.2d at 696. We overrule issue one.

In issue three, Robert complains that the trial court erred by finding that the spousal maintenance award could not be supported under a theory of contractual alimony because he did not sign or consent to the November 2020 Final Decree. Having already concluded in issue one that Robert consented to the terms of the December 2019 Final Decree and approved the January 2020 Nunc Order as to form and substance and that Robert's attempt to withdraw his consent after the trial court rendered judgment in January 2020, was too late, we overrule issue three.

In issue four, Robert complains the trial court erred by entering an Income Withholding Order to enforce spousal maintenance that exceeds the amount and duration limits under Chapter 8 of the Texas Family Code. *See* Tex. Fam. Code Ann. § 8.101. Whether a trial court may order income withholding for spousal maintenance is a question of law that we review *de novo*. *Kee*, 307 S.W.3d at 813.

Chapter 8 applies to contractual spousal maintenance if the contract specifically permits income withholding. Tex. Fam. Code Ann. § 8.101(b)(1). Section 8.101 of the Texas Family Code provides that a trial court may order that

income be withheld from the disposable earnings of the obligor in a proceeding in which the parties voluntarily entered into an agreement for periodic payments of spousal maintenance and the agreement was approved by the trial court. *Id.* § 8.101(a-1). However, the trial court cannot order that income be withheld from the disposable earnings of the obligor to the extent that any provision of the agreed order for maintenance exceeds the amount of periodic support or the period of maintenance the trial court could have ordered under Chapter 8. *Id.* § 8.101(a-2). Courts cannot use wage withholding to enforce an order incorporating a voluntary agreement to pay spousal maintenance that falls outside Chapter 8. *Dalton v. Dalton*, 551 S.W.3d 126, 134 (Tex. 2018). Although parties may agree to spousal maintenance that exceeds Chapter 8's amount and duration limits, the trial court can only order wage withholding to enforce the order up to those limits. *See id.*; *see also* Tex. Fam. Code Ann. § 8.101(a-2).

The record shows that Robert and Amy were married for approximately twenty-five years. Section 8.054 of the Texas Family Code provides that a trial court may not order maintenance that remains in effect for more than seven years after the date of the order, if the spouses were married to each other for at last 20 years but not more than 30 years[.]" Tex. Fam. Code Ann. § 8.054(a)(1)(B). In the December 2019 Final Decree, Robert agreed to pay spousal maintenance for over thirty years, a period that exceeds Chapter 8's applicable duration limit, and he agreed to an Order

22

to Income Withholding for Spousal Maintenance. In the December 2019 Final Decree, the trial court ordered Robert's employer to withhold spousal maintenance from Robert's disposable earnings to pay the full amount of maintenance ordered paid by the decree. The trial court's Amended Income Withholding Order for Support commands that Robert's employer is "required by law to deduct these amounts from the employee's/obligor's income until further notice."

We hold that the trial court's Amended Income Withholding Order for Support exceeds the applicable seven-year statutory maximum duration. *See id.* Accordingly, we conclude that the trial court erred by ordering wage withholding to enforce spousal maintenance that exceeds Chapter 8's duration limit. We sustain issue four and reverse the duration of the Amended Income Withholding Order for Support and remand for the trial court to enter an Amended Income Withholding Order for Support that does not exceed the applicable seven-year statutory maximum under Section 8.054. *See Dalton*, 551 S.W.3d at 135; *Keating v. Keating*, No. 02-20-00272-CV, 2022 WL 187985, at *1 (Tex. App.—Fort Worth Jan. 20, 2022, no pet.) (mem. op.).

In issue five, Robert argues that the trial court erred by not having a reporter's record of the Nunc Pro Tunc hearing. Although Robert complains that no reporter's record was created, the record before us demonstrates that Robert failed to complain in the trial court about the absence of a reporter's record of the Nunc Pro Tunc

23

hearing. The record shows that Robert approved the January 2020 Nunc Order as to form and substance as evidenced by his signature. The January 2020 Nunc Order ordered that a judgment be entered as shown on the attached order, Exhibit 1, which is an unsigned Final Decree of Divorce that stated the parties waived a record of testimony with the consent of the Court. We conclude that Robert waived his complaint about the absence of a reporter's record of the Nunc Pro Tunc hearing by failing to raise his complaint in the trial court. *See* Tex. R. App. P. 33.1; *Interest of G.X.H.*, 627 S.W.3d 288, 300 (Tex. 2021). We overrule issue five.

In issues six and seven, Robert argues the trial court erred by failing to grant a new trial in the interest of justice. Robert argues that we should remand the case for a new trial because the trial court's rulings regarding rendition and consent were erroneous and prevented him from presenting a defense; Amy committed fraud; he did not have an attorney and was mistreated by Amy and her attorney; the spousal maintenance should be reduced or eliminated because his income was reduced by forty percent; and there are inaccurate and false statements in the November 2020 Final Decree.

We review a trial court's denial of a motion for new trial for an abuse of discretion. *See In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 210 (Tex. 2009). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or when it acts without reference to any guiding

24

principles. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

First, we have already explained why the trial court's rulings regarding rendition and consent were not erroneous. Secondly, Robert has not presented any evidence of fraud. The record shows that during the hearing on Robert's motion for new trial, Robert testified that he signed off on the January 2020 Nunc Order to modify the December 2019 Final Decree so Amy could have the truck. Robert also testified that the December 2019 Final Decree provided that the spousal maintenance terminates in 2050, if Amy remarries, or when either party passes away. Although Robert complains that he took Amy's word that they would work things out, Robert consented to the spousal maintenance agreement, which is enforceable as a contract, and unlike Chapter 8, the parties' agreement did not provide for any modification based on a showing of a material change of circumstance. *See McCollough*, 212 S.W.3d at 642–43, 647. Moreover, the trial court did not err by approving the parties' agreement regardless of whether Robert contracted foolishly or whether the agreement created a hardship. *See Hallsted*, 483 S.W.3d at 77; *Schwartz*, 247 S.W.3d at 806; *Sorrels*, 592 S.W.2d at 696.

Additionally, the parties' agreement specifically states that Robert acknowledged before signing the final decree that he read the final decree and understood that the contents constituted a full and complete resolution of the case,

25

and Robert acknowledged that he did not sign by virtue of any coercion, duress or other agreement. Robert chose to appear *pro se* in his divorce, and *pro se* litigants are held to the same standards that apply to licensed attorneys. *See Sedillo v. Campbell*, 5 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Since Robert has not presented any evidence showing that Amy or her attorney committed fraud in securing his consent to the final decree, Robert is not entitled to a new trial just because he appeared *pro se* and consented to a contractual spousal maintenance agreement that allegedly created a hardship. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185 (Tex. 1978) (explaining that pro se litigants should not be given an unfair advantage over litigants represented by counsel).

While Robert complains that there are inaccurate and false statements in the November 2020 Final Decree, he does not point to any specific statements. To the extent that Robert is complaining that the November 2020 Final Decree states that Robert "has agreed to the terms of this judgment to the extent permitted by law, as evidenced by [his] signature below[,]" we have already explained that the record shows that Robert consented to the December 2019 Final Decree and approved the January 2020 Nunc Order as to form and substance, which included Exhibit 1 that is an exact copy of the final decree signed by the trial judge in November 2020. Further, the trial court signed the January 2020 Nunc Order and ordered "that a Judgment Nunc Pro Tunc be entered as shown on the attached order, Exhibit 1." Again, since

26

the record shows that Robert consented to the November 2020 Final Decree, the trial court's instruction to the parties to enter Judgment Nunc Pro Tunc does not affect the finality of the judgment and is merely an incidental act to carry the judgment into full effect. *See Dunn*, 439 S.W.2d at 833.

For all the reasons explained above, we conclude the trial court did not abuse its discretion by denying Robert's motion for new trial. We overrule issues six and seven. Having overruled issues one through three and five through seven, we affirm the trial court's judgment in part. Since we sustained issue four and reversed the duration of the Amended Income Withholding Order for Support, we reverse and remand in part for the trial court to enter an Amended Income Withholding Order for Support that does not exceed the applicable seven-year statutory maximum under Section 8.054.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on April 7, 2022
Opinion Delivered June 23, 2022

Before Golemon, C.J., Kreger and Johnson, JJ.

27