

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00493-CV

———————————————

BRYAN RIGG, Appellant

V.

JOSHUA HICKSON AND MACY HOLLIS, Appellees

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-342494-23

Before Sudderth, C.J., and Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

This case involves personal property to be conveyed along with residential real estate by means of language that—prefaced by one struck-through word—was typed into the "Special Provisions" paragraph 11 of Texas' standard residential-real-estate form contract. More pointedly, this case highlights the perils of not retyping contract provisions anew without strike-throughs or interlineations when their terms change before a final bargain is reached.

Bryan Rigg, the buyer–appellant, sued Joshua Hickson and Macy Hollis, the sellers–appellees, claiming they had removed personal property that the contract unambiguously required them to leave and seeking to recover that property's value. At trial, the sellers countered that because the word *ALL* was struck through in paragraph 11 ahead of the phrase "Personal property to remain at home including . . . ," the contract meant that "not all" personal property was to convey, a position the trial court agreed with. The trial court also agreed with the sellers that they were contractually obliged to leave only the specific items listed after the word *including* and that they had done so, thereby complying with the contract.

After a short bench trial, the trial court entered judgment in the sellers' favor and awarded them attorney's fees and costs. Because the trial court erred in construing the contract and holding that the sellers had complied with it, we will reverse.

# I. Background

Siblings Joshua and Macy are the adult children of Gary Hickson, who passed away in December 2022. At the time of his death, Gary owned a home at 2702 Marquis Circle West in Arlington. Because mortgage, insurance, and other payments were ongoing, Joshua and Macy (who was the independent executor) wanted to sell the property quickly and engaged Callie Farr as their real-estate agent.

Rigg's parents had designed and built the house in 1975, and it had been his childhood home. When he learned that Gary had died and the house was to be sold, Rigg contacted Macy and met with her and Joshua at the property to discuss his interest in buying it. According to Rigg, they informed him that they were already in discussions with a Peter Vo, who had offered $1.04 million, but that if Rigg matched that amount, the house could be his.

Rigg quickly arranged for financing and submitted a contract within days, only to learn that Joshua and Macy had accepted Vo's offer in the meantime. After discussions with Vo's realtor, Mike Farah, Rigg paid Vo for an assignment of the contract and began using Farah as his agent.[1] Rigg's lender later required him to make his own contract directly with the sellers.

---

[1]Rigg's initial agent, Jerry Boswell, lived next door to the house, and Rigg had known him since childhood. Boswell had arranged for a quick showing to Rigg and submitted Rigg's initial offer. Farah is both a real-estate agent and a lawyer, but he disclaimed having worked on this transaction in a legal capacity.

The parties used the standard "One to Four Family Residential Contract (Resale)" form promulgated by the Texas Real Estate Commission (TREC). The bold-face and underlined addition to paragraph 11, "Special Provisions"—the parenthetical portion of the paragraph is preprinted—reads as follows[2]:

11. **SPECIAL PROVISIONS:** (This paragraph is intended to be used only for additional informational items. An informational item is a statement that completes a blank in a contract form, discloses factual information, or provides instructions. Real estate brokers and sales agents are prohibited from practicing law and shall not add to, delete, or modify any provision of this contract unless drafted by a party to this contract or a party's attorney.) ~~All~~ **Personal property to remain at home including Pool table, Dining set, Living and Master furniture, Outdoor furniture, stereo systems and Hot Tub and all appliances . Closing shall be on earlier of closing date or when probate is finalized**

When Rigg took possession of the house, he discovered that multiple items of personal property were missing. Unable to work anything out with the sellers, he sued to recover as damages the missing items' value under theories of breach of contract, conversion, and violations of the Texas Theft Liability Act, *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001–.005. In response, the sellers raised the statute of frauds as an affirmative defense. *See* Tex. Bus. & Com. Code Ann. § 2.201(a) ("[A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . .").

At the ensuing bench trial, Rigg testified to damages and put into evidence an itemized list, with values totaling over $68,000, of personal property he claimed had

_____

[2]Rigg does not contend that the strike-through occurred after he signed the contract.

been wrongly removed.[3] Despite the parties' contending on appeal that the contract was unambiguous, albeit in diametrically opposed ways, the trial consisted of parol and extrinsic evidence about what each side had in mind concerning the special-provisions paragraph, about earlier iterations of that paragraph in both Vo's and Rigg's written offers, and about the sellers' and their realtor's belief[4] that the only personal property they had to leave (although they left a great deal more) were the specific items appearing after the word *including* in paragraph 11.

At the trial's conclusion, the trial court announced that it would make its decision and the winner could then submit attorney's-fee evidence. Four days later, the trial court entered a partial judgment that Rigg take nothing, so only Joshua and Macy submitted evidence of their attorney's fees. The resulting final judgment awarded Joshua and Macy attorney's fees of $10,075 and $1,420 in costs of court, including voluntary mediation fees.[5] Rigg timely appealed.

---

[3]Rigg's itemized exhibit included "curtains" missing from two bedrooms. Although neither side mentions it, from our reading of the TREC form's standard paragraph 2, "Property" to be conveyed automatically includes such "Accessories" as "curtains and rods, blinds, window shades, [and] draperies and rods," unless explicitly excluded by denominating them in paragraph 2(D). Paragraph 2(D) of the executed contract is blank, so it would appear that, at the very least, the sellers violated the contract by taking curtains, regardless of paragraph 11.

[4]Farr agreed that paragraph 11 "allow[ed] the sellers to take whatever they want[ed] out, personal property out of the house besides the enumerated items" and "[could] leave behind whatever they want in addition to those enumerated items."

[5]Rigg complains that the court costs erroneously included $650 for a mediation fee because the mediation was not court-ordered and the trial court made no good-

## II. Issues

Rigg presents us with four issues, which we quote:

1. The trial court's construction of the unambiguous contract is erroneous as a matter of law.

2. The trial court's construction of the contract (if ambiguous) is erroneous in light of the parol evidence.

3. The trial court erred in holding that Bryan Rigg's claims were barred by the UCC Statute of Frauds.

4. The trial court erred in charging court costs that included a mediation fee.

## III. Issues 1 & 2: *What Does Paragraph 11 Even Mean?*

### A. Standard of review; legal principles

If we can give a contract a definite legal meaning or interpretation, then it is not ambiguous, and we construe it as a matter of law according to its language. *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951). A contract is not ambiguous simply because the parties disagree about what it means. *Dynegy Midstream Servs., L.P. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). Rather, "a contract is ambiguous only if it is subject to more than one reasonable interpretation after the pertinent rules of construction have been applied." *Finley Res., Inc. v. Headington Royalty,*

___

cause finding to support that fee on the record. Our disposition means that we need not tackle this particular complaint. *See* Tex. R. App. P. 47.1.

*Inc.*, 672 S.W.3d 332, 340 (Tex. 2023) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)); *see also Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *RPC, Inc. v. CTMI, LLC*, 606 S.W.3d 469, 483–84 (Tex. App.—Fort Worth 2020, pet. denied) (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)); *Interest of H.W.*, No. 02-24-00275-CV, 2025 WL 1271925, at *4 (Tex. App.—Fort Worth May 1, 2025, pet. filed) (mem. op.).

And "[o]bjective manifestations of intent control, not 'what one side or the other alleges they intended to say but did not.'" *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763–64 (Tex. 2018) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010); *see also Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) ("[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not.").

Our supreme court also holds that "a primary determinant of meaning" is "context" and that "language that might evoke multiple meanings if read in isolation will often be made more precise by its contextual use." *Finley Res.*, 672 S.W.3d at 339–40. Here, because paragraph 11 provides parties to a real-estate sale the option to address such nonessential tag-along matters as personal property to be left behind, we do not think that exploring the context of this real-property sales contract—whose foundational purpose was to convey residential real estate—adds anything to how we construe paragraph 11. The preprinted part of paragraph 11 states on its face, after all, that it is "intended to be used only for additional informational items."

Although both parties' top-line argument on appeal is that paragraph 11 is unambiguous, neither side asked the trial court to construe it as a matter of law by, for example, moving for summary judgment—or even making an opening or closing statement asking for a matter-of-law interpretation. Instead, the trial consisted of nothing but parol and extrinsic evidence from start to finish as though the factfinder had to resolve an ambiguity, and the trial court entered findings of fact and conclusions of law. *Cf. Harris v. Howard*, No. 01-22-00882-CV, 2024 WL 4885848, at *1 (Tex. App.—Houston [1st Dist.] Nov. 26, 2024, no pet. h.) (mem. op.) ("On the parties' agreed position that their contract is unambiguous, the trial court and parties halted a bench trial less than halfway through the first trial witness, and the trial court interpreted the contract as a matter of law.").[6] Nonetheless, the trial court's findings and conclusions are couched in terms of *lack* of ambiguity: Finding of Fact 1, for example, recites that "Paragraph 11 . . . *clearly demonstrates* that the parties were aware that not all personal property would convey because they struck through 'All' (i.e., A̶L̶L̶), meaning 'not all' personal property."[7] [Emphasis added.] The first three

---

[6]The en banc court later denied appellees' ambiguity ground for en banc reconsideration, granted reconsideration on a different ground, and left the majority disposition unchanged. 2025 WL 1583520, at *1, *2 (Tex. App.—Houston [1st Dist.] June 5, 2025, order).

[7]The trial court also introduced its findings and conclusions with comments that included, "Plaintiff also signed a subsequent version of the sales contract that also included the marked-through 'All' in Paragraph 11, *clearly meaning* that not all personal property would convey." [Emphasis added.]

Conclusions of Law are that "[t]he contract language in Paragraph 11 'Special Provisions' did not require Defendants to convey all personal property"; "[b]y crossing out the word 'ALL' in Paragraph 11, the parties entered into an agreement that 'not all' personal property would convey at closing"; and "[b]y leaving the specific items listed in Paragraph 11 of the contract, Defendants complied with the terms of the contract." Nothing in the findings and conclusions or in the final judgment suggests that the trial court's decision was based on anything other than its reading of what it apparently considered an unambiguous contract.

So we will first ask: after applying the pertinent rules of construction, can we assign an unambiguous meaning to paragraph 11?

## B. Applicable rules of construction; analysis

### 1. "Including"

We start with the interpretive canon that applies to "Personal property to remain at home *including* [certain items]." [Emphasis added.] *Including* signals enlargement, not limitation; it is illustrative, not exclusive. *Stonegate Fin. Corp. v. Broughton Maint. Ass'n, Inc.*, No. 02-18-00091-CV, 2019 WL 3436616, at *5 (Tex. App.—Fort Worth July 30, 2019, no pet.) (mem. op.) ("As a straightforward definitional matter, *including* does not mean *only* or *limited to*—a fact self-evident from lawyers' ubiquitous use of the phrase *including but not limited to* when (for example) propounding document requests."); *Waldrop v. Waldrop*, 552 S.W.3d 396, 409–10 (Tex. App.—Fort Worth 2018, no pet.) ("General rules of contract construction provide

9

that the terms 'includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and the use of those terms does not create a presumption that components not expressed are excluded."); *see* Tex. Gov't Code Ann. § 311.005(13) (same); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law* 132–33 (2012) (discussing semantic canon under which "[t]he verb *to include* introduces examples, not an exhaustive list"); Bryan A. Garner, *Garner's Dictionary of Legal Usage* 439 (3d ed. 2011) (instructing that *including* "should not be used to introduce an exhaustive list, for it implies that the list is only partial. In the words of one federal court, 'It is hornbook law that the use of the word *including* indicates that the specified list . . . is illustrative, not exclusive.' *Puerto Rico Maritime Shipping Auth. v. ICC*, 645 F.2d 1102, 1112 n.26 (D.C. Cir. 1981)").

Based on this established canon and reading the contract in light of it, we hold that paragraph 11's listing of certain personal property after the word *including* was simply illustrative and did not limit the personal property conveying with the house to only "Pool table, Dining set, Living and Master furniture, Outdoor furniture, stereo systems and Hot Tub and all appliances." If, then, we were dealing with a sentence reading only "Personal property to remain at home including," we could stop here and hold that the sellers were obliged to leave everything in the way of personal property, because that would be paragraph 11's unambiguous meaning.

### 2. Struck-through wording

But we must consider what to make of the appearance of "~~ALL~~" (so struck) that precedes "Personal property to remain" (so capitalized, as grammatical rules require of a sentence's beginning).[8] In examining paragraph 11's appearance alone—without considering the parties' testimony about what they intended or how they subjectively interpreted it—we can turn to caselaw involving contracts with crossed-out language and ponder whether to completely ignore it—as some courts have counseled—or wonder what it might signify and thus declare an ambiguity.

Rigg cites us to two cases taking the former approach, which would simplify matters considerably. Take the oldest of them, *Mineral Investing Corp. v. Bishop Cattle Co.*, 49 S.W.2d 532 (Tex. App.—San Antonio 1932), *aff'd on other grounds*, 78 S.W.2d 174 (Tex. Comm'n App. 1935). There, the parties disputed who had the right to receive one-half of the delay rentals that might be paid to extend the term within which a well had to be drilled under an oil-and-gas lease. *Id.* at 533. The parties to the mineral deed that started it all had marked through preprinted form language dealing with delay rentals, leading the court to observe and hold, "Certain words had been deleted from the contract, and in that condition it was presented to the court. The

---

[8] *See, e.g.*, https://www.thesaurus.com/e/grammar/when-to-capitalize-words/ ("You should always capitalize the first letter of the first word in a sentence, no matter what the word is.") (last accessed August 7, 2025).

parts [struck] out, presumably before it was signed, could not be considered in the construction of the contract." *Id.*[9]

But that seemingly straightforward principle is nuanced, with the supreme court more recently surveying other Texas cases on the subject and concluding that, in certain situations, language struck from a contract must be considered to determine the meaning of a contract that otherwise seems unambiguous. *Hous. Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469–71 (Tex. 2011); *cf. G&G Mech. Constructors, Inc. v. Jeff City Indus., Inc.*, 549 S.W.3d 492, 497 n.9 (Mo. Ct. App. 2018) (declining to adopt the Texas Supreme Court's reasoning in *Houston Exploration* and noting that "precedent in Missouri is clear that [struck] provisions are extrinsic to the contract and not to be considered").[10]

Although we have not found a case in which parties later struck through something they had themselves first manually added—probably because by far the better practice is to start from scratch and retype the affected provision—we cannot

---

[9]Rigg's other case is from an Idaho federal district court. *United States v. Fid. & Deposit Co. of Maryland*, Case No. 2:19-cv-00293-RCT, 2022 WL 1538707, at *6 (D. Idaho May 16, 2022) ("[Struck] language is extrinsic and may not be resorted to in construing a contract").

[10]The dissent in *Houston Exploration* advocated unsuccessfully for the absolutist not-to-be-considered position, writing that "[t]o consider deleted language or other previous drafts or negotiations would destroy the parol[-]evidence rule without easing interpretation" and quoting *Straub v. Screven*, 19 S.C. 445, 449–50 (1883), for rule that "contracts must be construed by the words which they contain, and not with reference to words omitted or erased"). 352 S.W.3d at 475 (Jefferson, C.J., dissenting).

simply disregard "~~ALL~~." We do agree with Rigg that in the normal circumstance the meaning of "All Personal property to remain" and "Personal property to remain" is the same, but the act of striking through "ALL" signifies *something*.

The trial court concluded, as a legal matter, that it meant "not all personal property," but that is an unsatisfying—if not altogether incorrect—interpretation. Disregarding the list of example items after *including* (because it is illustrative only) leaves a riddle worthy of the Sphinx: if the sellers were to leave "not all personal property," what *were* they to leave? We hold that, as presented, paragraph 11 is of uncertain meaning or is reasonably susceptible to more than one meaning, *see Coker*, 650 S.W.2d at 393, and is ambiguous.

### C. Remedy for trial court's misinterpretation

Because the trial court incorrectly interpreted paragraph 11 as not requiring the sellers to leave personal property over and above the listed *including* items, the trial court erred in holding that the sellers had complied with the contract; they did not. But we cannot render judgment in Rigg's favor because paragraph 11 was made ambiguous by striking through *ALL*, leaving the trial court's legal conclusion that the sellers had contracted to leave "not all" personal property meaningless.[11] A remand is necessary for the trial court to reconsider its judgment.

---

[11]The one thing the parties seemed to agree on was that the sellers could remove sentimental items before Rigg took possession. But those items were not identified at trial, nor did the sellers go through Rigg's detailed exhibit of missing personal property at trial to explain what they thought was sentimental and thus

13

## IV. Issue 3: *The UCC Statute of Frauds Doesn't Apply*

To assist the trial court's ultimate resolution of this dispute, we also address Rigg's third issue, which challenges the trial court's holding that the statute of frauds found in the Texas version of the Uniform Commercial Code bars his claims. Tex. Bus. & Com. Code Ann. § 2.201(a) ("[A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . .").

The sellers raised the statute of frauds as an affirmative defense, but the lone, oblique mention of it at trial was minimal: on cross-examination, Rigg agreed that the missing personal property he was suing over had "a value well over $500." Beyond that, the statute of frauds' only other appearance came in the trial court's conclusion of law that Rigg's "claims for damages associated with the personal property, beyond the items listed in the contract, are barred by the Statute of Frauds . . . ."

But as Rigg points out, this case does not involve a contract for goods but rather for real property. *Cf. Perkins v. Chase Manhattan Mortg. Corp.*, No. 03-04-00741-CV, 2006 WL 1649006, at *7 (Tex. App.—Austin June 16, 2006, no pet.) (mem. op.) (noting that "real[-]estate contracts are not governed by the UCC"). Nothing in the record or on the face of the contract suggests that any portion of the $1.04 million

properly removed. That's not surprising, though, considering the sellers' crabbed reading of paragraph 11 as conveying only the "including" items.

14

purchase price was earmarked as compensation for personalty; indeed, the Third Party Financing Addendum accompanying the sales contract expressly shows $1.04 million as the property's appraised value.

TREC actually provides a mechanism for dealing with personal property in connection with a real-estate sale: its website offers a form "Non-Realty Items Addendum" for exactly this situation, but the parties here did not use it. That addendum begins, "A. For an additional sum of $_____ and other and good valuable consideration, Seller shall convey to Buyer at closing the following personal property (specify each item carefully, include description, model numbers, serial numbers, location, and other information)." https://www.trec.texas.gov/sites/default/files/pdf-forms/OP-M.pdf (last accessed August 7, 2025). Using this form, even if the consideration was $1.00, could better have focused the parties on what was staying and what was not.

We agree with Rigg that the trial court erred in concluding that the statute of frauds barred his "claim for the value of any personal property beyond the items listed in Paragraph 11 of the contract" and sustain his third issue.

## V. Conclusion

Having found error in the trial court's construction of the contract at issue, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  August 14, 2025

16